**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 18 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARK SHOOK; and DENNIS
JONES, on behalf of themselves and
all others similarly situated,

      Plaintiffs-Appellants,

SHIRLEN MOSBY; and JAMES
VAUGHAN,

      Plaintiffs-Intervenors-
      Appellants,

    v.

EL PASO COUNTY, BOARD OF
COUNTY COMMISSIONERS OF EL
PASO COUNTY, and JOHN WESLEY
ANDERSON, in his capacity as
Sheriff of El Paso County,

      Defendants-Appellees.

No. 03-1397

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE COLORADO**
**(D.C. NO. 02-M-651-MJW)**

---

David C. Fathi, American Civil Liberties Union, Washington, D.C. (with Mark
Silverstein, A.C.L.U. Foundation of Colorado, and Thomas S. Nichols, Davis
Graham & Stubbs LLP, Denver, Colorado, on briefs) for Plaintiffs-Appellants and
Plaintiffs-Intervenors-Appellants.

Gordon L. Vaughan, Vaughan & DeMuro, Colorado Springs, Colorado (with Sara Ludke Cook, Vaughan & DeMuro, Colorado Springs, Colorado, and Jay A. Lauer, Assistant County Attorney, El Paso County, Colorado, on the brief) for Defendants-Appellees.

_____

Before **TACHA** , **BARRETT** , and **TYMKOVICH** , Circuit Judges.

_____

**TYMKOVICH** , Circuit Judge.

_____

This case involves the unsuccessful effort by four former state prisoners to certify a class action challenging their lack of access to mental health care while incarcerated in the El Paso County, Colorado Jail. The district court denied them class certification and dismissed the suit based on its conclusion that under the Prisoner Litigation Reform Act the relief the plaintiffs sought was "beyond the competence and the jurisdiction of [the] court." *Shook v. Bd. of County Comm'rs of County of El Paso*, 216 F.R.D. 644, 648 (D. Colo. 2003).

The plaintiffs now appeal, arguing that the district court applied the wrong standard in denying class certification. We take jurisdiction under 28 U.S.C. § 1291 (2000) and, agreeing with the prisoners, reverse and remand for further proceedings.

## I. BACKGROUND

### A. The Jail

The El Paso County Jail is located in Colorado Springs, Colorado. The Jail

2

houses both men and women, including recent arrestees, persons awaiting trial, and persons convicted and sentenced to terms of two years or less under state law. Each of the four named plaintiffs[1] in this suit was incarcerated in the Jail sometime between 2001 and 2002, either as a pretrial detainee or as an inmate.

## B. The Class Action Complaint

On April 2, 2002, the prisoners filed a class action complaint under 42 U.S.C. § 1983 seeking injunctive and declaratory relief against the El Paso County Board of County Commissioners and the Sheriff of El Paso County in his official capacity. They sought to certify a class of "all persons with serious mental health needs who are now, or in the future will be, confined in the El Paso County Jail." App. at 13.

In their complaint, the named plaintiffs allege that Jail officials have violated the prisoners' constitutional rights by acting with deliberate indifference to their mental health needs contrary to the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment's prohibition against punishment of pretrial detainees. In particular, the plaintiffs allege that Jail personnel subjected them to (1) inadequate housing and overcrowding; (2) inadequate inpatient care; (3) inadequate mental health

---

[1] Unless otherwise indicated, throughout this opinion the term "plaintiffs"or "prisoners" refers both to plaintiffs Mark Shook and Dennis Jones and plaintiff-intervenors Shirlen Mosby and James Vaughan.

3

facilities for women inmates; (4) improper treatment through the use of special detention cells, restraints, and pepper spray; (5) inadequate supervision to prevent self-harm or suicide; (6) inadequate methods of distributing medication; and (7) inadequate mental health staffing. They also assert that El Paso's management of the Jail has created a substantial risk of future harm to class members.

The individual plaintiffs each assert slightly different factual allegations to support their claims of deliberate indifference. The first, Mark Shook, maintains that he has been receiving psychiatric care since childhood for his conditions of Asperberger's Syndrome (a form of autism) and bipolar disorder. Before he came to the Jail in fall 2001, he regularly took anti-psychotic drugs prescribed by his psychiatrist to control his symptoms. He alleges that after his arrival at the Jail, he had no access to doctors or medications for three weeks. When Jail officials finally allowed him to see a doctor, the doctor refused to prescribe his regular medications because they were not on the Jail's list of approved medications.

Plaintiff Dennis Jones asserts that he is bipolar, suffers from depression and anxiety, and has considered suicide. Prior to entering the Jail in September 2001 he claims a prescription of a combination of various drugs successfully controlled his symptoms. Jones claims that Jail officials denied him access to any medications for nearly a month after his incarceration, and when he finally obtained a prescription, he received only an insufficient dose of one of the drugs

4

he needed.  In addition, he alleges that Jail staff who monitored the levels of his medication through blood sample testing took the samples too soon or too long after he received his medication for the tests to be accurate.

Plaintiff-intervenor Shirlen Mosby alleges that she is bipolar and has experienced numerous attacks of anxiety, depression, feelings of hopelessness, and suicidal thoughts.  She asserts that after her incarceration began in April 2002, Jail officials improperly placed her in special detention cells and Jail staff belittled her condition.  She also maintains that because of inadequate supervision she was able to attempt suicide three times while housed in the Jail.

Finally, plaintiff-intervenor James Vaughan asserts that he is bipolar and has nearly continuous depression and anxiety.  He claims that he had inadequate access to psychiatrists during his incarceration as a pretrial detainee beginning in May 2002.  He also claims that he was deprived of medication for several days after he arrived at the Jail and never received the blood tests necessary to monitor the medication he finally did receive.

The plaintiffs allege that their lack of access to adequate mental health care is life-threatening.  For example, they claim that the Jail officials' deliberate indifference to prisoners' mental health needs has led to the deaths of at least four prisoners and resulted in injuries to others.

## C.  The Procedural History

5

El Paso moved to dismiss the class action complaint, arguing that each class member was required to fully exhaust his or her administrative remedies under the Prisoner Litigation Reform Act. 42 U.S.C. § 1997e(a) (2000) ("PLRA"). El Paso asserted that because only the class representatives had exhausted their remedies, the class could not be certified. On its own motion, the district court requested supplemental briefing from both parties regarding the impact of the PLRA's remedial provisions on the issue of certifying a class seeking prospective relief. App. at 62 (citing 18 U.S.C. § 3626 (2000)).

After oral argument, the district court issued an order denying both the defendants' motion for dismissal and the plaintiffs' motion for class certification. Although the district court noted that the plaintiffs had each alleged facts sufficient to show that El Paso was deliberately indifferent to their mental health needs in violation of the Eighth Amendment, *see Shook*, 216 F.R.D. at 646 (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)), the court ultimately concluded that the PLRA precluded class certification because the "breadth [of relief sought made] the proposed class action not manageable with [the] court's limited jurisdiction." *Id*. at 648.

In light of its ruling, the court granted the plaintiffs thirty days in which to file an amended complaint for individual relief. *Id*. at 649. By this time, however, none of the plaintiffs remained in the Jail and therefore they no longer

6

had standing to seek individual relief. The district court accordingly dismissed the action. App. at 140–41.

The prisoners now appeal the district court's denial of class certification.

## II. ANALYSIS

### A. Standard of Review

Whether the district court applied the correct legal standard in its decision to grant or deny class certification is reviewed de novo. *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). "When the district court has applied the proper standard in deciding whether to certify a class, we may reverse that decision only for abuse of discretion." *Adamson v. Bowen*, 855 F.2d 668, 675 (10th Cir. 1988). However, "that discretion must be exercised within the framework of rule 23." *Stirman v. Exxon Corp.*, 280 F.3d 554, 561 (5th Cir. 2002). An abuse of discretion occurs where the district court misapplies the Rule 23 factors in deciding whether class certification is appropriate. *See id.*; *see also J.B. v. Valdez*, 186 F.3d 1280, 1287 (10th Cir. 1999) ("There is no abuse of discretion when the trial court applies the correct criteria [under Rule 23] to the facts of the case.") (citations omitted). We review de novo whether the district court correctly determined that the PLRA applied to the Rule 23 class certification analysis. *See Dang v. UNUM Life Ins. Co. of Am.*, 175 F.3d 1186, 1189 (10th Cir. 1999) ("We review the district court's decisions on questions of

7

law . . . de novo.").

Although the party seeking to certify a class bears the burden of proving that all the requirements of Rule 23 are met, *see Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988), the district court must engage in its own "rigorous analysis" of whether "the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982). In doing so, the court must accept the substantive allegations of the complaint as true, *J.B.*, 186 F.3d at 1290 n.7; *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974), although it "need not blindly rely on conclusory allegations which parrot Rule 23" and "may consider the legal and factual issues presented by plaintiff's complaints." *J.B.*, 186 F.3d at 1290, n.7 (quoting 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 7.26 (3d ed. 1992)).

## B. The District Court's Order

We now turn to the district court's denial of class certification. Rule 23(a) requires an analysis of four elements which are preconditions to class certification: numerosity, commonality, typicality, and adequacy of the named parties to represent the class. Fed. R. Civ. P. 23(a). The court must then look to the category of class action under Rule 23(b) for additional prerequisites involving certification of a class.

In this case, the district court appropriately began its analysis by referring

to Rule 23(a)'s four prerequisites to class certification. Instead of applying Rule 23(a)'s framework to the facts alleged, however, it moved to other "considerations controlling the motion for class certification," including

> whether the named plaintiffs and interveners have standing to assert the claims made on behalf of the putative class, whether the members of the class can be identified, whether the class allegations are broader than the constitutional claim, whether the putative class is manageable and, whether the court has the authority to order the prospective remedy requested.

*Shook*, 216 F.R.D. at 647. The court's evaluation of these factors turned primarily on whether the prisoners could in fact show an Eighth Amendment violation and whether their allegations, if proven, would entitle them to the relief they requested. The court did not address Rule 23(b)(2).

In evaluating whether the prisoners could allege an Eighth Amendment violation, the court reached two conclusions. It first determined that because the Jail's population was "inherently fluid," the plaintiffs could only prove that the defendants were deliberately indifferent to the class's needs *if* the Jail used "an intake diagnostic procedure to determine persons having serious mental health needs." *Id*. at 648. However, it concluded that intake screening was not constitutionally required and therefore could not form the basis for a constitutional violation.

The court then determined that the prisoners' complaint was really an attempt "to reform jail practices rather than to redress past constitutional torts and

9

prevent their reoccurrence." *Id*. at 647. The problem here, according to the court, was that the PLRA limited the federal court's ability to address such a complaint. Since it concluded that under the PLRA it could neither "prescribe jail practices for humane treatment of prisoners" nor interfere with the executive and legislative branches' ability to structure prisons as they saw fit, the relief the plaintiffs sought was "beyond the competence and the jurisdiction of [the] court." *Id*. at 648.[2]

## C. The Effect of the PLRA on Rule 23

We first consider whether, as the district court concluded, the PLRA has changed the requirements for class certification under Rule 23. El Paso argues that the PLRA has changed the prison condition litigation landscape in a fundamental way that must be considered in the Rule 23 class action certification analysis. The prisoners respond that the PLRA affects only the remedies they can ultimately obtain and does not alter Rule 23.

---

[2] The court's concern with the merits of the complaint is evidenced by the hearing on the class action motions: *see, e.g.*, App. at 88 (explaining that for the plaintiffs to have exhausted their claims, their grievance would have to "rise to the level of a violation of the Eighth Amendment" and then concluding that "[s]ome of these things don't rise to that level"), 98 (asking whether the remedies requested by the plaintiffs are required by the Eighth Amendment), 100–01 (requesting supplemental briefing on why the requested relief is required by the Eighth Amendment and then stating, "[A]s far as I interpret your complaint, you've gone way beyond anything that any court has ever said is required under the Eighth Amendment").

The district court's analysis of the PLRA centered around the following provision that limits prospective relief in cases involving prison conditions:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A).

While the court determined that this provision did not entirely prohibit class action certification, it held that it did constitute a significant limitation on its jurisdiction to entertain class action suits by prisoners. *Shook*, 216 F.R.D. at 646. The question for us, then, is whether courts may consider the relief the prisoners seek in determining whether to certify a class under the PLRA. Our review of the PLRA leads us to conclude that it does not limit class certification decisions in this way.

In interpreting the PLRA, "[w]e begin, as we do any instance of statutory construction, with the language of the statute." *In re Geneva Steel Co.*, 281 F.3d 1173, 1178 (10th Cir. 2002) (citing *Yankee Atomic Elec. Co. v. N.M. & Ariz. Land Co.*, 632 F.2d 855, 857 (10th Cir. 1980)); *see also Guidry v. Sheet Metal Workers Int'l Ass'n, Local No. 9*, 10 F.3d 700, 708 (10th Cir. 1993) ("The objective of

11

reading the statute is to determine the intent of Congress.  The text of the statute itself is the best evidence of that intent.") (citations omitted).  The text of the PLRA says nothing about the certification of class actions.  Based on the statute's absence of direction in that area, we presume that Congress intended to leave Rule 23 intact.  *See Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 133 n.4 (2002) (concluding that Congress is "presumed to be aware" of a statute's interpretation when it amends another part of the same statute without addressing the part at issue); *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 117–18 (2002) (explaining that Congress's amendment of "the law without repudiating the regulation" suggested consent to ongoing use of the regulation).  This presumption is buttressed by the fact that the PLRA includes provisions relating to the administration of class action suits, suggesting that Congress recognized that class actions would continue to remain available to challenge conditions of confinement.[3]  *Cf. Founding Church of Scientology of Wash., D.C., Inc. v. Director, Fed. Bureau of Investigation*, 459 F. Supp. 748, 755 (D.D.C. 1978) (noting that because Congress did not expressly waive the exhaustion of administrative remedies requirement when it amended the Federal Tort Claims Act, that requirement remained applicable to class actions under Rule 23).

---

[3] For instance, the PLRA contains provisions governing prisoner release orders, 18 U.S.C. § 3626(a)(3); consent decrees, *id*. subsection (c); and the use of special masters, *id*. subsection (f).

Our conclusion that the PLRA does not alter the class certification analysis under Rule 23 has been reached by other courts. The Fifth Circuit, for example, held that § 3626(a)(1) is not implicated until the court undertakes to fashion prospective relief. *Williams v. Edwards*, 87 F.3d 126, 133 (5th Cir. 1996) ("The district court has fashioned no prospective relief and the provisions of [§ 3626(a)(1)] have yet to be triggered."). The court did, however, explain that if, after examining the plaintiffs' claims, the district court found a violation of a federal right, "then any remedy it might fashion must conform to the standards set forth in the Act." *Id*. Thus, because the fashioning of prospective relief does not occur at the class certification stage, it logically follows that § 3626(a)(1) does not bear on a court's class certification analysis.

In addition, courts have continued to allow prison conditions cases to be certified as long as the elements of Rule 23 have been met, even cases broadly challenging conditions of confinement. For instance, in *Anderson v. Garner*, 22 F. Supp. 2d 1379 (N.D. Ga. 1997), when the defendants argued that under § 3626(a)(1) courts "should diligently refrain from certifying classes . . . which would require the federal courts to maintain security and control of the state prison system," the court emphasized that "[s]ection 3626(a)(1) addresses only the *type* of relief courts may use to redress constitutional violations, and says nothing about the nature of the proceedings underlying the remedy ordered by the court."

13

*Id*. at 1383 (citations omitted); *see also Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) (reviewing the propriety of class certification under Rule 23, then separately reviewing whether district court's injunctive relief was narrowly tailored under § 3626(a)(1)); *Skinner v. Uphoff*, 209 F.R.D. 484, 489 (D. Wyo. 2002) (certifying class action challenging prison conditions because plaintiffs satisfied elements of Rule 23); *Jones 'El v. Berge*, No. 00-C-421-C, 2001 WL 3437961 (W.D. Wis. Aug. 14, 2001) (allowing amended prisoner class action complaint challenging prison conditions because plaintiffs satisfied elements of Rule 23).

Thus, we conclude that Congress did not intend the PLRA to alter class certification requirements under Rule 23 and that the district court erred in concluding otherwise.

### D. Federal Rule of Civil Procedure 23

Having held that the PLRA does not add new elements to the class certification analysis, Rule 23 remains the appropriate analytical framework for class certification questions. We now turn to the issue of whether the district court properly applied Rule 23's certification requirements to the facts of this case.

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the

merits, but rather whether the requirements of Rule 23 are met." *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982) (quotation omitted); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) ("[N]othing in either the language or history of Rule 23 . . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."). Although "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," the court's responsibility is to "carefully apply the requirements of Rule 23(a)." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 160 (1982) (citations and quotations omitted); *see also Anderson*, 690 F.2d at 799.

Thus, the court's first inquiry is whether the plaintiff can show the existence of the four threshold requirements of Rule 23(a). *Adamson v. Bowen*, 855 F.2d 668, 675 (10th Cir. 1988). Specifically, the court must decide if

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

If the court finds that the plaintiffs have met these threshold requirements, "it must then examine whether the action falls within one of three categories of

15

suits set forth in Rule 23(b)." *Adamson*, 855 F.2d at 675. In this case, the plaintiffs sought to certify the class action under 23(b)(2), which provides that a class action is appropriate if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Therefore, the court was required to consider whether "the remedies the class [sought] . . . appl[ied] equally to all cases pending within the class." *Adamson*, 855 F.2d at 676. Factually different claims of individual class members "should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy." *Id.*

According to the prisoners, the problem with the court's order is that it does not square its concerns about the relief they seek with the requirements of Rule 23(a) and (b)(2). They argue that by conducting a review of whether the plaintiffs' requested relief was constitutionally required, the district court prematurely peeked at the merits of the case and improperly read two requirements of Rule 23(b)(3)—identifiability and manageability—into the Rule 23(b)(2) analysis.

In defense of the court's methodology, El Paso argues that the decision to certify a class "involves intensely practical considerations" and that therefore the district court properly examined the additional considerations in its order denying

16

class certification. *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988). Additionally, El Paso maintains that denial was proper under Rule 23 because the court's ruling is best read as concluding that (1) the complaint could not meet the commonality, typicality, and representational requirements of Rule 23(a) and (2) the plaintiffs' claims were too dissimilar to satisfy Rule 23(b)(2).

Specifically with respect to Rule 23, El Paso argues that the prisoners' individual claims are too varied to meet the commonality and typicality requirements because each prisoner's claim requires a particularized analysis on the merits. El Paso claims that these failings in commonality and typicality make the prisoners inadequate class representatives. Finally, El Paso argues that the dissimilarities among the prisoners' claims—i.e., their varied mental health problems and potential remedies for those problems—make final injunctive relief inappropriate under Rule 23(b)(2).

On this record and at this stage in the litigation, we agree with the prisoners. The district court erred by not specifically addressing the traditional Rule 23 factors in denying class certification. *See J.B.*, 186 F.3d at 1287. Its order instead prematurely focused on whether the court could ultimately fashion a remedy that satisfied the strictures of § 3626(a)(1)(A).

Two additional considerations bear on the district court's application of Rule 23. The prisoners contend that by looking at the merits of their claim, the

district court appears to have imported additional elements from Rule 23(b)(3) into the (b)(2) analysis: identifiability and manageability. While we agree with the prisoners in part, as explained below, we are not persuaded that manageability is never a proper inquiry under Rule 23(b)(2).

Regarding identifiability, the district court's order specifically states that "[t]he initial problem in this case is the identification of members of the class." *Shook*, 216 F.R.D. at 647–48. However, while the lack of identifiability is a factor that may defeat Rule 23(b)(3) class certification, such is not the case with respect to class certification under Rule 23(b)(2). *See Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) ("[N]otice to the members of a (b)(2) class is not required and the actual membership of the class need not therefore be precisely delimited."). In fact, many courts have found Rule 23(b)(2) well suited for cases where the composition of a class is not readily ascertainable; for instance, in a case where the plaintiffs attempt to bring suit on behalf of a shifting prison population. *Id*. at 1366; *see also Adamson*, 855 F.2d at 676 (citing *Yaffe* with approval).

The district court also looked to a manageability requirement in applying Rule 23(b)(2): it found that the "breadth [of relief] [made] the proposed class

action not manageable with [the] court's limited jurisdiction."[4] *Shook*, 216 F.R.D. at 648. The circuits do not speak with one voice on whether courts may look to manageability considerations in evaluating Rule 23(b)(2) class certification. The Fourth Circuit, for example, has held that "[i]ssues such as class action manageability are properly committed to the district court's discretion, because that court generally has a greater familiarity and expertise with the practical and primarily factual problems of administering a lawsuit than does a court of appeals." *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 757 (4th Cir. 1998) (citations and quotations omitted). The court also stated that, "in exercising the 'broad discretion' to decide whether to allow a suit to proceed as a class action, some courts have ruled it is appropriate to take account of considerations not expressly addressed in Rule 23, including manageability in Rule 23(b)(2) cases." *Id.* at 758 (citing 7B C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1785 (2d ed. 1986)). The *Lowery* court went on to hold that since "efficiency is one of the primary purposes of class action procedure, . . . in appropriate circumstances a district court may exercise its discretion to deny certification if the resulting class action would be

---

[4] Rule 23(b)(3) expressly directs courts to assess the "difficulties likely to be encountered in the management of a class action."

unmanageable or cumbersome." *Id.* at 759 n.5.[5]

According to the Fifth Circuit, however, in *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1105 (5th Cir. 1993), "questions of manageability and judicial economy are . . . irrelevant to 23(b)(2) class actions." The Ninth Circuit reached a similar conclusion in *Elliott v. Weinberger*, 564 F.2d 1219, 1229 (9th Cir. 1977) ("[B]y its terms, Rule 23 makes manageability an issue important only in determining the propriety of certifying an action as a (b)(3), not a (b)(2), class action."), *aff'd in pertinent part sub nom. Califano v. Yamasaki*, 442 U.S. 682, 701 (1979).

We agree with the *Lowery* court. Elements of manageability and efficiency are not categorically precluded in determining whether to certify a 23(b)(2) class. While Rule (b)(2) classes for injunctive relief are usually easier to manage than damages class actions, courts also need to look to whether the class is amenable to uniform group remedies. *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402,

---

[5]Several other courts have endorsed this view. *See, e.g.*, *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1019 n.111 (D.C.C. 1986) (noting that "manageability problems that might block a class action under Rule 23(b)(3) may be entailed as well in the Rule 23(b)(2) format"); *Simer v. Rios*, 661 F.2d 655, 669 n.24 (stating that "it is not all clear that the problems in managing a class action are not relevant in certifying (b)(1) and (b)(2) class actions"); *Seidel v. Gen. Motors Acceptance Corp.*, 93 F.R.D. 122, 126 (W.D. Wash. 1981) (holding that manageability is and must be a concern when deciding class certification under Rule 23(b)(2)); *Duncan v. Tennessee*, 84 F.R.D. 21, 34 (M.D. Tenn. 1979) (noting that manageability is a proper inquiry under Rule 23(b)(2)).

414 (5th Cir. 1998); 2 Newberg & Conte, *supra,* at § 4:17 (while injunctive relief "may often be awarded without requiring a specific or time-consuming inquiry into the varying circumstances and merits of each class member's individual case," courts may still look to whether the class is amenable to "uniform group remedies" in assessing management of the class). The vehicle of class action litigation must ultimately satisfy practical as well as purely legal considerations.

Notwithstanding our holding that manageability is not categorically barred in Rule 23(b)(2) class certification decisions, the district court's order has yet to apply fully the Rule 23 framework. On remand, it may well be that the factual and legal concerns leading the court to consider problems of identifying and managing the class support (a) a finding under Rule 23(a) that the class lacked sufficient commonality, typicality or adequacy of representation, (b) a finding under Rule 23(b)(2) that El Paso did not operate the prison "on grounds generally applicable" to the class, or (c) a finding that, notwithstanding the PLRA, efficiency or manageability considerations undermine the court's ability to provide injunctive relief to the class framed in the complaint. In looking at these issues, there could also be (d) reasons why the "merits may become intertwined with proper consideration of other issues germane to whether the case should be certified as a class action" that guide the court's class certification decision.

21

*Adamson*, 855 F.2d at 677 n.12. We cannot make that determination on this record, however, until the district court has applied all of the elements of Rule 23 to the facts alleged in the complaint.

### III. CONCLUSION

We hold that the PLRA does not add new elements to the class certification analysis. Rather, because the district court erred by denying class certification relief without addressing Rule 23(a)'s threshold requirements or assessing Rule 23(b)(2)'s requirement of general applicability, we must reverse and remand for further consideration of the prisoners' complaint. We express no view on the district court's ultimate decision whether to certify in light of this opinion, nor do we opine on the ultimate merits of the substantive claims.[6]

---

[6] We also do not address whether the district court could properly dispose of the case in another manner, for instance, by dismissing the case on its own motion under 42 U.S.C. § 1997e(c)(1) if it determines that the plaintiffs have failed to state a claim upon which relief can be granted or by "us[ing] an accelerated summary judgment procedure before class certification to test the plaintiff[s'] right to proceed to trial." *Adamson*, 855 F.2d at 677 n.12 (citing 7B C. White, A. Miller & M. Kane, *supra,* at § 1785.

*03-1397, Shook v. El Paso County*

**TACHA**, Chief Circuit Judge, concurring in part, dissenting in part.

I readily join the majority's opinion, with one exception. The majority holds that manageability is a proper criterion for courts to consider when certifying Fed. R. Civ. P. 23(b)(2) class actions. I respectfully dissent from this portion of the majority's opinion.

First, I find that circuit precedent bars this holding. We previously addressed whether a district court could rely upon a criterion listed under Rule 23(b)(3) as a reason for denying class certification under Rule 23(b)(2). *See Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988). There, plaintiff "sought relief under Rule 23(b)(2), which contains no requirement of 'predominance.' The district court placed upon the class a burden that the rule does not authorize." *Id*. I find that *Adamson* governs this case, prohibiting the use of a criterion found in Rule 23(b)(3)—such as manageability—as grounds for denying a Rule 23(b)(2) class.

Second, even if circuit precedent did not govern this issue, I find that the standard rules of statutory construction lead to a result contrary to that reached by the majority. Rule 23(b)(3) explicitly has a manageability criterion. *See* Fed. R. Civ. P. 23(b)(3)(D). Rule 23(b)(2) does not. Standard rules of construction, then, lead to the conclusion that manageability is not a criterion for Rule 23(b)(2)

classes. *See O'Gilvie v. United States*, 519 U.S. 79, 96 (1996) ("When the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.") (internal citation omitted).

The majority counters that Rule 23(b)'s language is merely permissive, allowing the district court to consider Rule 23(b)(3) criteria in a Rule 23(b)(2) class. *See* Fed. R. Civ. P. 23(b) ("An action *may* be maintained as a class action if the prerequisites [are met.]") (emphasis added). Such a reading, however, simply ignores the entire structure of Rule 23(b). *See Almendarez-Torres v. United States*, 523 U.S. 224, 228-29 (1998) ("we look to the statute's language, structure, subject matter, context, and history--factors that typically help courts determine a statute's objectives and thereby illuminate its text."). The majority's reading collapses the differences between a Rule 23(b)(1), (b)(2) and (b)(3) class, allowing a district court to consider any criteria under any of the subsections for any type of class. Such a reading is not in line with the structure of Rule 23(b) and is thus contrary to standard statutory construction. *See United States v. Rodgers*, 461 U.S. 677, 706 (1983) ("The word 'may,' when used in a statute, usually implies some degree of discretion[, but] [t]his common-sense principle of statutory construction . . . can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the

statute") (footnote and citations omitted). Rule 23(b) clearly envisions the different subsections and their concomitant criteria applying distinctly to different types of class actions.

I find, therefore, the Fifth and Ninth Circuits' approach more persuasive. *See Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1105 (5th Cir. 1993) ("questions of manageability and judicial economy are . . . irrelevant to 23(b)(2) class actions."); *Elliott v. Weinberger*, 564 F.2d 1219, 1229 (9th Cir. 1977) (same), *aff'd in part sub nom. Califano v. Yamasaki*, 442 U.S. 682 (1979). As such, I respectfully dissent from the manageability section of the majority's opinion.