**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 29, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MINDI LANCE QUINN; JANICE
YOAK, individually and as
representatives of a class of persons who
are similarly situated,

      Plaintiffs-Appellants,

v.

NATIONWIDE INSURANCE
COMPANY,

      Defendant-Appellee.

No. 07-4150

(D.C. No. 2:05-CV-180-C)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **TACHA, BRISCOE,** and **HARTZ**, Circuit Judges.

      Plaintiffs Mindi Quinn and Janice Yoak, beneficiaries under a variable annuity

contract issued by defendant Nationwide Insurance (Nationwide), appeal from the district

court's grant of summary judgment in favor of Nationwide on their claims for breach of

contract and conversion. Plaintiffs also appeal the district court's denial of their motions

for class certification and to amend their complaint to add an additional plaintiff. We

_____

      [*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

*Factual background*

Pat Shropshire (Shropshire) purchased from Nationwide, through its agent Morgan Stanley, a variable annuity contract (the Contract) with an effective date of September 7, 2001. Shropshire's purchase payments for the Contract totaled $175,661.10. The Contract identified six beneficiaries who would share in the Contract's death benefits in the event Shropshire died: Carol Ann Fuller (20% beneficiary); Mark Ferrin (16% beneficiary); Nancy Schmidt Olmstead (16% beneficiary); Mindi Lance Quinn (16% beneficiary); Janice Yoak (16% beneficiary); and Robert J. Davis (16% beneficiary). The Contract also, in a section entitled "Death Benefit Payment," outlined how death benefits would be calculated and distributed by Nationwide:

> The value of the Death Benefit will be determined as of the Valuation Date[1] coincident with, or next following the date the Company [Nationwide] receives in writing at the Home Office the following three items: (1) proper proof of the Annuitant's [Shropshire's] death; (2) an election specifying distribution method; and (3) any applicable state required form(s).
>
> Proof of death is either:
> (1) a copy of a certified death certificate;
> (2) a copy of a certified decree of a court of competent jurisdiction as to the finding of death;

---

[1] The Contract defined the term "Valuation Date" as "[e]ach day the New York Stock Exchange and the Company's Home Office are open for business or any other day during which there is a sufficient degree of trading of the Variable Account's Underlying Mutual Fund shares such that the current net asset value of its Accumulation Units might be materially affected." App. at 231.

(3) a written statement by a medical doctor who attended the deceased; or
(4) any other proof satisfactory to the Company.

The Beneficiary must elect a method of distribution which complies with the "Distribution Provisions" of this Contract. The Beneficiary may elect to receive such Death Benefits in the form of: (1) a lump sum distribution; (2) an annuity payout; or (3) any distribution that is permitted under state and federal regulations and is acceptable by the Company. If such election is not received by the Company within 60 days of the Annuitant's death, the Beneficiary will be deemed to have elected a cash payment as of the last day of the 60 day period.

Payment of the Death Benefit will be made or will commence within 30 days after receipt of proof of death and notification of election.

Aplee. App. at 202-03.

Shropshire died on February 1, 2002, approximately five months after purchasing the Contract. Nationwide was first notified of Shropshire's death on June 10, 2002, when Morgan Stanley forwarded to Nationwide a death benefit claim, including a notice of election specifying a method of distribution, on behalf of beneficiary Mark Ferrin. Nationwide deemed the death certificate attached to the claim as proper proof of death under the Contract. On June 11, 2002, Nationwide paid Ferrin's portion of the death benefits in one lump sum payment, as elected by Ferrin.

The submission of Ferrin's claim impacted Nationwide's handling of all subsequent claims for death benefits under the Contract in two ways. First, Nationwide treated the date that Ferrin submitted his claim, June 10, 2002, as the "Valuation Date" under the terms of the Contract. Second, Nationwide treated Ferrin's claim as triggering the valuation of the total "Death Benefit" under the Contract for all six beneficiaries.

3

App. at 232. In doing so, Nationwide relied on a rider attached to the Contract. That rider provided, in pertinent part:

> If the Annuitant dies at any time prior to the Annuitization Date, the dollar amount of the Death Benefit will be the greatest of: (1) the Contract Account Value; (2) the sum of all Purchase Payments, less an adjustment for amounts surrendered; (3) the greatest Contract Value on any Contract Anniversary Date prior to the deceased Annuitant's 86th birthday . . . or (4) the 5% Interest Anniversary Value.

Aplee. App. at 217. Because Shropshire's death occurred before the first Anniversary Date of her contract, Nationwide deemed alternatives (3) and (4) inapplicable. Nationwide also deemed alternative (1) inapplicable because the "Contract Account Value," as of June 10, 2002, was less than the sum of all the purchase payments Shropshire had made. Accordingly, Nationwide concluded, in accordance with alternative (2), that the Death Benefit under the Contract was "the sum of all Purchase Payments," or $175,661.10.[2] Id. In turn, Nationwide paid Ferrin his share of the Death Benefit.

On June 27, 2002, Morgan Stanley forwarded to Nationwide a claim on behalf of Carol Ann Fuller. Fuller, like Ferrin, elected to have her share of the Death Benefit distributed in one lump sum payment. Nationwide concluded that all of the prerequisites for payment of Fuller's claim had been satisfied, and thus, on June 28, 2002, paid her portion of the Death Benefit.

---

[2] Because the "Contract Value" of the Contract had fallen below the total of the purchase payments due to investment losses, Nationwide paid moneys into the Contract so that, as of the June 10, 2002 Valuation Date, the Contract Value matched the calculated Death Benefit. App. at 233.

4

On March 3, 2003, Morgan Stanley sent Nationwide a claim on behalf of five of the six beneficiaries.[3] The five listed beneficiaries included Ferrin and Fuller who, as noted, had already received their death benefit payments from Nationwide. Thus, the claim form essentially listed three beneficiaries, Quinn, Yoak, and Davis, who had not previously requested or been paid their share of the Death Benefit. Shortly after receiving the claims from these three beneficiaries, Nationwide personnel had follow-up conversations with Morgan Stanley regarding the claims. During a March 10, 2003, telephone conversation between Nationwide and Morgan Stanley representative Leslie Adams, Nationwide personnel asked Adams whether Nationwide "should go ahead and process the [claims] for the 3 bene[ficiarie]s who[se] signature[s]" were on the claim form, i.e., Quinn, Yoak and Davis? App. at 234. Adams advised Nationwide "not to process [these] death benefits" because "she need[ed] to contact the bene[ficiaries] to discuss other options." Id. at 235.

On March 10, 2003, Morgan Stanley forwarded to Nationwide a claim on behalf of the sixth beneficiary, Nancy Schmidt. As indicated on the form, Schmidt elected to defer her share of the Death Benefit and have it distributed five years following the date of Shropshire's death. Nationwide honored Schmidt's election the following day, March 11, 2003, by withdrawing her share of the Death Benefit and establishing an individual contract for her.

---

[3] The sixth beneficiary, Nancy Schmidt, was listed on the claim form, but failed to sign it.

5

On April 2, 2003, Morgan Stanley forwarded to Nationwide a revised claim on behalf of Davis. In the revised claim, Davis elected to have his share of the Death Benefit distributed in a lump sum, with the proceeds being paid into an interest-bearing checking account. Nationwide complied with Davis's request the following day, April 3, 2003.

In early 2005, Quinn and Yoak filed suit against Nationwide in Utah state court. Nationwide deemed the suit to be equivalent to a request for payment of Quinn's and Yoak's shares of the Death Benefit. Accordingly, on March 24, 2005, Nationwide processed the claims of Quinn and Yoak and paid them each $42,294.08. Nationwide arrived at these amounts by taking the base amount it paid the first claimant, Ferrin, as of the Valuation Date ($28,105.78), and adding to it two amounts: (1) approximately three years of statutory interest under Utah law that amounted to $8,370.14 per plaintiff; and (2) the actual amount by which the Contract Value had appreciated after the other beneficiaries were paid, which resulted in an additional $5,818.16 per plaintiff.

*Procedural background*

On March 2, 2005, Nationwide removed plaintiffs' suit from Utah state court to federal court. On March 22, 2005, plaintiffs filed a first amended complaint asserting claims against Nationwide for breach of contract and conversion.[4] Plaintiffs also moved for class certification on their breach of contract claim against Nationwide. The district

---

[4] The first amended complaint also asserted claims against Nationwide for breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, civil RICO, and civil conspiracy. Plaintiffs have effectively abandoned those claims on appeal.

court denied plaintiffs' class certification motion.

Nationwide moved for summary judgment against plaintiffs, and plaintiffs in return moved for partial summary judgment against Nationwide. After the summary judgment motions were fully briefed and before they were orally argued, plaintiffs moved to amend their complaint to add Carol Ann Fuller as a new party plaintiff, and simultaneously moved for summary judgment on her proposed claims against Nationwide. The district court granted Nationwide's motion for summary judgment and denied plaintiffs' motions for partial summary judgment and to amend the complaint to add Fuller as a party plaintiff. Plaintiffs subsequently filed what they described as a Rule 52(b) motion to enter additional findings, and what in substance appears to have been a motion for reconsideration. In that motion, plaintiffs also asked the district court to address the issue of a death benefit check from Nationwide to Quinn that was deposited with the clerk of the district court in February of 2006. The district court ultimately denied plaintiffs' motion to enter additional findings, but granted their request to release the funds held on Quinn's behalf.

## II.

### *Denial of class certification*

On appeal, plaintiffs challenge the district court's denial of their motion for class certification. "We review de novo whether the district court applied the correct legal standard in its decision to grant or deny class certification . . . ." Carpenter v. Boeing Co., 456 F.3d 1183, 1187 (10th Cir. 2006). If the district court applied the proper standard, its

7

"decision will be reversed only for abuse of discretion." Id.

Federal Rule of Civil Procedure 23 governs class certification. "Rule 23(a) requires an analysis of four elements which are preconditions to class certification: numerosity, commonality, typicality, and adequacy of the named parties to represent the class." Shook v. El Paso County, 386 F.3d 963, 968 (10th Cir. 2004). "A party seeking class certification must show 'under a strict burden of proof' that all four requirements are clearly met." Trevizo v. Adams, 455 F.3d 1155, 1162 (10th Cir. 2006) (quoting Reed v. Bowen, 849 F.2d 1307, 1309 (10th Cir. 1988)). If all four requirements are satisfied, "[t]he court must then look to the category of class action under Rule 23(b) for additional prerequisites involving certification of a class." Shook, 386 F.3d at 968.

*a) Rule 23(a) analysis*

The district court in this case, having properly identified the controlling standards under Rule 23(a), concluded that plaintiffs were unable to satisfy the commonality or typicality requirements. With respect to Rule 23(a)'s commonality prerequisite, the district court concluded that "[d]etermining the amounts of money owed under what are presumably different contracts with different language along with deciding what was a 'reasonable amount of time' under the circumstances of different cases would present numerous *uncommon* issues of law and fact." Aplee. App. at 43 (italics in original). Although the district court noted that plaintiffs' certification motion asserted that Nationwide "breached a common contractual duty to pay benefits based upon 'substantively identical financial contracts,'" it noted that plaintiffs had "not moved to

8

amend their complaint to include this new allegation," and likewise had failed to submit any evidence to support this new allegation. Id. at 44. "In short," the district court concluded, plaintiffs "failed to carry *their* burden of identifying a common, certifiable factual issue in regard to their claims." Id. at 45 (italics in original). The district court also concluded that plaintiffs "fail[ed] to meet Rule 23(a)'s typicality prerequisite." Id. at 46. In particular, the district court concluded that plaintiffs "ha[d] not shown that the contracts (or condition precedents) [we]re similar and were breached in the same way." Id. at 47.

Notably, plaintiffs do not mention, let alone challenge, any of the district court's conclusions. Instead, plaintiffs, mistakenly assuming that this court has authority to certify a class, see Aplt. Br. at 35 ("Plaintiffs respectfully request that the Court certify a class"), provide us with what they describe as an "abridged version of" their memorandum in support of their motion for class certification. Id. at 35, n.6. Plaintiffs thus proceed to argue that this case should be certified as a class in order to compel Nationwide to timely pay the correct death benefits to unsuspecting beneficiaries of variable annuities whose payments were shorted or delayed because Nationwide breached its contract by failing to pay the guaranteed benefit amount, failing to pay the 5% enhanced rider, and "raking" premiums and fees after the "valuation date."

Even if we were to construe plaintiffs' arguments as challenges to the district court's rulings, we conclude that plaintiffs have failed to establish that the district court abused its discretion in denying their motion for class certification. With respect to Rule

9

23(a)'s commonality and typicality requirements, plaintiffs have offered nothing more than speculation that other contracts exist containing the same operative language. Further, even assuming that Nationwide employs identical language in some or all of its other contracts, plaintiffs have failed to establish that the circumstances of their case are typical of the claims of the proposed class. Indeed, it appears to us that the circumstances presented in this case, i.e., plaintiffs utilizing a Morgan Stanley agent to initially assert their claims for benefits and then waiting a lengthy period of time before filing suit to obtain benefits, makes their breach of contract claim factually unique. Thus, we are persuaded that the district court acted well within its discretion in concluding that "[d]etermining the amounts of money owed . . . under the circumstances of different cases would present numerous *uncommon* issues of law and fact." Aplee. App. at 43 (italics in original).

*b) Rule 23(b) analysis*

In an alternative holding, the district court concluded that, "[e]ven assuming" plaintiffs "could meet the commonality and typicality prerequisites after discovery," they were unable to "meet Rule 23(b)'s requirements for maintaining a class action." Id. at 48. To begin with, the district court noted, plaintiffs did "not argue that they satisf[ied] Rule 23(b)(1)." Id. As for Rule 23(b)(2), the district court noted that it did "'not extend to cases in which the appropriate final relief relate[d] exclusively or predominantly to money damages.'" Id. (quoting Fed. R. Civ. P. 23, advisory committee's note). "Although the [plaintiffs'] amended complaint d[id] include a singular request for

10

declaratory relief," the district court noted, the plaintiffs likewise "d[id] not deny that they primarily s[ought] money damages." Id. at 49. With regard to Rule 23(b)(3), the district court agreed with Nationwide "that the [plaintiffs]' class definition [wa]s impermissibly broad because it ma[d]e class members impossible to identify prior to individualized fact-finding and litigation." Id. at 50. That is, the district court was "persuaded that neither [it] nor the parties c[ould] readily determine whether a beneficiary [wa]s a putative class member without conducting an [sic] highly-individualized inquiry regarding the seven criteria" for class membership identified by plaintiffs. Id. at 51. The district court also noted that the plaintiffs "ha[d] not even attempted to shoulder th[e] burden" of "showing that differences in controlling state law [we]re minor," and thus it concluded that "individual legal issues predominate[d] over common ones." Id. at 52. Finally, the district court concluded that plaintiffs had not met "the superiority requirement" of Rule 23(b)(3). Id. at 53. In particular, the district court concluded that, given the "fact-intensive inquiries" necessary to determine class membership and claims, and "the differences in state law [that] w[ould] likely compound the unmanageability," "a class action would [not] be more efficient and economical than individual actions." Id. at 54.

In their appellate pleadings, plaintiffs again fail to specifically challenge the district court's conclusions. Instead, they assert that they "seek to certify a class action under Rule 23(b)(3)," Aplt. Br. at 41, and proceed to discuss, in conclusory fashion, each of the factors relevant to that rule, id. at 42-43. Plaintiffs, however, have clearly failed to establish either "that the questions of law or fact common to class members predominate

11

over any questions affecting only individual members," or "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Indeed, as the district court aptly noted, it is apparent that both Nationwide, and in turn the district court, would have to engage in a significant amount of work simply to identify the purported class members (i.e., by analyzing individual contract language along with the factual circumstances of each case).[5] Thus, we fully agree with the district court that the class action proposed by plaintiffs would be difficult to manage and would not be more efficient than having the claims of individual class members resolved independently.

Lastly, plaintiffs argue that they "seek to have this class certified under F.R.Civ.P. Rule 23(b)(2) because 'the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.'" Aplt. Br. at 44. This argument, however, is clearly contradicted by plaintiffs' first amended complaint,

---

[5] In their opening appellate brief, plaintiffs describe the proposed class as including any "designated beneficiary on a Nationwide variable annuity contract that includes the guaranteed 'Death Benefit Payment' provision . . . and me[t] the following criteria" "at any time from at least January 28, 2003 . . . to the present": (1) "Nationwide calculated [their] death benefit value on a specific 'Valuation Date'"; and (2) "Nationwide failed to properly calculate and pay the correct death benefit value as of the member's 'Payment' due date." Aplt. Br. at 36. According to plaintiffs, "[a]ll class members [would in turn] belong to a specific sub-class based on the percentage of interest applied to their damages." Id. Notably, these descriptions differ from the descriptions of the class that plaintiffs offered to the district court. Below, plaintiffs asserted that class members had to meet seven specific criteria for inclusion. See Aplee. App. at 50 (outlining seven criteria).

12

which does not request injunctive relief. Further, plaintiffs have not even attempted to refute the district court's conclusion that the primary relief they are seeking is monetary damages. Thus, we conclude the district court did not abuse its discretion in refusing to certify a class under Rule 23(b)(2).

*Breach of contract - failure to timely pay benefits*

Plaintiffs next contend that the district court erred in granting summary judgment in favor of Nationwide on their claim that Nationwide breached the Contract by failing to pay them lump sum death benefits on or before July 11, 2002. "We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." Somoza v. Univ. of Denver, 513 F.3d 1206, 1211 (10th Cir. 2008) (internal quotation marks omitted). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Fed.R.Civ.P. 56(c)). In conducting our analysis, we "examine the factual record and draw all reasonable inferences in the light most favorable to the non-moving party." Id.

In a diversity case such as this, the forum state's substantive law governs the analysis of the claims. Hill v. Allstate Ins. Co., 479 F.3d 735, 739 (10th Cir. 2007). The law of the forum state in this case, Utah, directs us, in interpreting a contract, to "look to the writing itself to ascertain the parties' intentions, and we consider each contract provision . . . in relation to all of the others, with a view toward giving effect to all and

13

ignoring none." Green River Canal Co. v. Thayn, 84 P.3d 1134, 1141 (Utah 2003) (internal quotation marks omitted). "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." Id. (internal quotation marks omitted).

Plaintiffs' breach of contract claim hinges on what they contend is Nationwide's failure to comply with the Contract's "Death Benefit Payment" provisions. Among other things, the "Death Benefit Payment" provisions discuss the beneficiary's election of a method of distribution (what will hereafter be referred to as the "election" provision) and, in turn, Nationwide's obligation to distribute death benefits to a beneficiary:

> The Beneficiary must elect a method of distribution which complies with the "Distribution Provisions" of this Contract. The Beneficiary may elect to receive such Death Benefits in the form of: (1) a lump sum distribution; (2) an annuity payout; or (3) any distribution that is permitted under state and federal regulations and is acceptable by the Company. *If such election is not received by the Company within 60 days of the Annuitant's death, the Beneficiary will be deemed to have elected a cash payment as of the last day of the 60 day period.*
>
> *Payment of the Death Benefit will be made or will commence within 30 days after receipt of proof of death and notification of election.*

Aplee. App. at 203 (italics added). Plaintiffs interpret the first italicized sentence (part of the "election" provision) as providing that if, within sixty days of the annuitant's death, a beneficiary does not elect the form in which to receive the death benefit payment, Nationwide will pay the death benefit in one lump sum. In turn, plaintiffs interpret the second italicized sentence as requiring Nationwide to make such lump sum payment

14

within thirty days after its receipt of proof of the annuitant's death and any such default election. Applying these interpretations to the circumstances of their case, plaintiffs assert that because they did not elect a form of payment within sixty days of Shropshire's death (i.e., on or before April 2, 2002), they were deemed under the Contract to have elected one lump sum payment and, because Nationwide received proof of Shropshire's death on June 10, 2002, Nationwide was required to pay them their lump sum payments on or before July 10, 2002. Because Nationwide failed to do so, plaintiffs argue, it breached the terms of the Contract.

Even assuming, for purposes of argument, that plaintiffs' interpretation of the election provision is correct and that Nationwide breached the Contract by failing to pay plaintiffs their lump sum payments on or before July 10, 2002, plaintiffs have failed to offer any evidence whatsoever that they were harmed by the breach. As noted by both Nationwide and the district court, when Nationwide actually paid each of the plaintiffs on March 29, 2005, it included in the payment amounts "interest as measured under Utah law in the amount of $8,370.14 for each plaintiff, calculated based on Utah's applicable statutory rate of interest, plus the actual appreciation in the Shropshire annuity contract, which amounted to $5,818.16 for each plaintiff " (bringing each plaintiff's total payout to $42.294.08). Aplee. Br. at 35. In short, Nationwide overpaid each of the plaintiffs and, thus, plaintiffs are unable to establish any damages arising out of Nationwide's allegedly tardy payments.

*Breach of contract - 5% death benefit enhancement*

15

Plaintiffs argue that "[e]ven if Nationwide did not breach by failing to pay [them] the guaranteed [death] benefit, it is still in breach [of the Contract] because [they] are also entitled to the 5% death benefit enhancement." Aplt. Br. at 53. Plaintiffs are presumably referring to the contract rider that outlined how Nationwide was to calculate the death benefits owed to plaintiffs:

> If the Annuitant dies at any time prior to the Annuitization Date, the dollar amount of the Death Benefit will be the greatest of: (1) the Contract Account Value; (2) the sum of all Purchase Payments, less an adjustment for amounts surrendered; (3) the greatest Contract Value on any Contract Anniversary Date prior to the deceased Annuitant's 86th birthday . . . or (4) *the 5% Interest Anniversary Value*.
>
> * * *
>
> The 5% Interest Anniversary Value is equal to Purchase Payments minus amounts surrendered, accumulated at 5% compound interest until the last Contract Anniversary prior to the deceased Annuitant's 86th birthday. Such total accumulated amount shall not exceed 200% of the net of Purchase Payments and amounts surrendered. The adjustment for amounts subsequently surrendered after the most recent Contract Anniversary will reduce the 5% Interest Anniversary Value in the same proportion that the Contract Value was reduced on the date of the partial surrender.

Aplee. App. at 217 (emphasis added).

Even assuming for purposes of argument that plaintiffs were entitled under the Contract to the 5% "enhancement," they failed to present sufficient evidence from which a rational finder of fact could conclude that their benefits, inclusive of the enhancement, would have exceeded the amounts actually paid to them by Nationwide. Thus, the district court did not err in granting summary judgment in favor of Nationwide on this claim.

*Breach of contract - imposition of .15% rider premium fee*

16

Plaintiffs argue that Nationwide also breached the Contract by continuing to impose a .15% rider premium fee after Shropshire's death. Ignoring plaintiffs' failure to adequately raise this argument in their summary judgment pleadings, we again note that Nationwide's uncontroverted evidence establishes that it overpaid plaintiffs the amount of death benefits due under the Contract, thereby eliminating any damages that arose out of Nationwide's purported deduction of the .15% premium fee. In other words, we agree with the district court that plaintiffs "failed to show that the amount Nationwide paid them, making favorable assumptions and including interest, is less than the amounts they would receive with all deductions disgorged and contract riders added but without the favorable assumptions." App. at 196.

*Conversion*

Plaintiffs alleged in their complaint that Nationwide committed the tort of conversion by retaining their death benefits after it was obligated under the Contract to pay those proceeds to plaintiffs. The district court granted summary judgment in favor of Nationwide on this claim on the grounds that plaintiffs "d[id] not contend that their conversion claim [wa]s independent of their breach of contract claim." App. at 199. Plaintiffs attempt to revive their conversion claim on appeal, arguing simply that "[w]hether Nationwide converted [their] benefits, or 'willfully interfered,' is a question of fact that should be remanded for consideration by a jury." Aplt. Br. at 58.

We reject plaintiffs' argument. To begin with, plaintiffs have failed to directly challenge the district court's conclusion that their conversion claim is not independent

17

from their breach of contract claim. Further, Utah law firmly supports the district court's conclusion. See Lee v. Thorpe, 147 P.3d 443, 446 (Utah 2006) (holding "that when a conflict arises between parties to a contract regarding the subject matter of that contract, the contractual relationship controls, and parties are not permitted to assert actions in tort in an attempt to circumvent the bargain they agreed on.") (internal quotation marks omitted).

*Denial of motion to amend complaint*

In their final issue on appeal, plaintiffs contend the district court erred in denying their motion to amend their complaint to add Carol Ann Fuller as a new party plaintiff. We review for abuse of discretion a district court's denial of a motion to amend the complaint. Fields v. Okla. State Penitentiary, 511 F.3d 1109, 1113 (10th Cir. 2007).

The district court in this case grounded its denial of plaintiffs' motion to amend on three bases. First, it concluded that because there was no merit to plaintiffs' motion for class certification, "Fuller's desire to serve as a representative plaintiff [wa]s moot," and, "[t]o the extent [she] m[ight] seek individual relief, her claims d[id] not satisfy the diversity amount in controversy requirement." App. at 201. Second, it noted that "Nationwide ha[d] not had an opportunity to conduct discovery with regard to Ms. Fuller's claims and therefore . . . would be unduly prejudiced by the amendment." Id. at 201-02. Third, it noted that "no adequate explanation for" plaintiffs' untimely filing of their motion "ha[d] been offered." Id. at 202. More specifically, the district court noted that "fact discovery closed on November 8, 2006," and plaintiffs' "counsel d[id] not

18

adequately explain why he did not file their motion to amend at that time, if not earlier [rather than waiting until March 22, 2007]." Id.

Because plaintiffs have failed on appeal to challenge any of these three bases for the district court's order, we readily conclude that the district court did not abuse its discretion in denying plaintiffs' motion to amend their complaint.

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

19