**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 29, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARK SHOOK and DENNIS JONES,
on behalf of themselves and all others
similarly situated,

      Plaintiffs-Appellants,

and

JAMES VAUGHAN; SHIRLEN
MOSBY; THOMAS REINIG; and
LOTTIE ELLIOTT,

      Intervenors-Plaintiffs-Appellants,

v.

THE BOARD OF COUNTY
COMMISSIONERS OF THE
COUNTY OF EL PASO and TERRY
MAKETA, in his official capacity as
Sheriff of El Paso County,

      Defendants-Appellees.

No. 06-1454

---

THE JUDGE DAVID L. BAZELON
CENTER FOR MENTAL HEALTH
LAW; CENTER FOR CHILDREN'S
LAW AND POLICY; COLORADO
CENTER ON LAW AND POLICY;
COLORADO CROSS-DISABILITY
COALITION; COLORADO
LAWYERS COMMITTEE FOR
CIVIL RIGHTS; THE LEGAL
CENTER FOR PEOPLE WITH

DISABILITIES AND OLDER
PEOPLE; NATIONAL CENTER FOR
YOUTH LAW; NATIONAL
DISABILITY RIGHTS NETWORK;
NATIONAL SENIOR CITIZENS
LAW CENTER; PUBLIC JUSTICE;
COLORADO COUNTIES, INC.,

    Amici Curiae.

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 02-cv-00651-RPM-MJW)**

---

Mark Silverstein, Legal Director, American Civil Liberties Foundation of
Colorado, Denver, Colorado (David C. Fathi, National Prison Project for the
ACLU Foundation, Inc., Washington, D.C., and Thomas S. Nichols, Davis
Graham & Stubbs LLP, Denver Colorado with him on the briefs), for Plaintiffs-
Appellants.

Gordon L. Vaughan, Vaughan & DeMuro (Sara Ludke Cook, Vaughan &
DeMuro, and Jay A. Lauer, County Attorney of El Paso County, with him on the
brief), Colorado Springs, Colorado, for Defendants-Appellees.

Thomas J. Lyons and Andrew D. Ringel, Hall & Evans, L.L.C., Denver, Colorado,
for Amicus Curiae Colorado Counties, Inc.

Laura L. Rovner, Student Law Office, and Stephen Arvin, Stephanie Whalum and
Margaret Yoder, Student Attorneys, University of Denver Sturm College of Law,
Denver, Colorado, for Amici Curiae.

---

Before **TYMKOVICH, GORSUCH,** and **HOLMES**, Circuit Judges.

---

**GORSUCH**, Circuit Judge.

Plaintiffs Mark Shook and Dennis Jones, along with several intervenors, appear before us for the second time to contest the district court's denial of their motion to certify a class action consisting of all present and future mentally ill inmates at Colorado's El Paso County Jail. In their first appeal, we held that in denying class certification the district court erred by relying on the jurisdictional limitations imposed by the Prison Litigation Reform Act ("PLRA") to the total exclusion of the standards laid out in Federal Rule of Civil Procedure 23. The difficulty with the district court's opinion, in our view, was that it conflated a merits analysis of the relief available to plaintiffs – relief potentially curtailed by the PLRA – with the threshold class certification requirements of Rule 23 – which are not affected by the PLRA. On remand, the district court again denied class certification, but did so this time with reference to Rule 23's strictures. We find that the district court's analysis of the Rule 23 framework is free of the legal errors we identified in its first effort, and although we might reach a different conclusion were we addressing the certification question in the first instance, we are unable to say that the district court abused its discretion in declining to certify the proposed class under Rule 23(b)(2).

I

Filed pursuant to 42 U.S.C. § 1983, plaintiffs' suit seeks declaratory and injunctive relief aimed at addressing a variety of conditions at the Jail alleged to

violate the Eighth Amendment's ban against cruel and unusual treatment, as incorporated against the states through the Fourteenth Amendment. Among other things, these alleged conditions include inadequate mental health care; insufficient protections against self-inflicted injuries and suicides; inadequate methods of distributing medication to inmates and screening for mental health issues at the time inmates are committed to the Jail; and the improper and overly broad use of special detention cells, restraints, and pepper spray against inmates. Aplt. App. at 198-99.

Plaintiffs offer allegations about their own treatment at the Jail and claim their treatment fairly represents the treatment class members generally receive at the Jail. The nature of their individual conditions and treatment, however, also serves to illustrate the range of the alleged mental health care issues at the Jail. For example, Mark Shook suffers from both Asperberger's Syndrome and bipolar disorder. Prior to his incarceration at the Jail in 2001, Mr. Shook regularly took anti-psychotic medications prescribed by his psychiatrist. After being confined to the Jail, Mr. Shook alleges that he was denied access to his medications and medical care for three weeks. Shirlen Mosby, while suffering from mental illnesses similar to Mr. Shook, experiences suicidal tendencies apparently not shared by him. She alleges that her problems at the Jail stemmed, not from the

failure to provide her with her medications, but from a failure to monitor her for potentially suicidal behavior.

Thomas Reinig, who is bipolar with schizoaffective disorder and is also a paranoid schizophrenic, alleges yet a different set of violations by the Jail. Specifically, Mr. Reinig complains that he was confined in a special detention cell multiple times, sometimes while restrained with handcuffs and leg irons. Apparently unlike any of the other plaintiffs, he has also been subjected to electric shocks from a taser on several occasions, and in other instances has been threatened with similar treatment. Notably, although he has prescriptions for a variety of medications and has been listed as a suicide risk, Mr. Reinig does not appear to allege that he was denied his medications or inadequately supervised.

Finally, Lottie Elliott's allegations cut across the groups before us, alleging denial and improper administration of prescription medication and improper supervision in light of her suicidal tendencies, but also adding an allegation of inadequate access to mental health professionals at the Jail itself. Ms. Elliott arrived at the Jail after spending three days on the psychiatric ward at St. Francis Hospital after a suicide attempt. While at the hospital, a psychiatrist saw Ms. Elliott daily and prescribed an anti-psychotic medication called Seroquel, to be taken morning, night, and "as needed." Despite being released into the care of the Jail with this prescription in hand, medical staff at the Jail changed Ms.

Elliott's medications without consulting her or warning her of any possible side effects, and without allowing her to see a psychiatrist or physician despite her request. Eventually, Ms. Elliott attempted suicide, and only after that attempt did the Jail's psychiatrist meet with her.[1]

In due course after bringing this suit, plaintiffs moved for class certification while defendants moved to dismiss the complaint. The district court ultimately denied both motions. With respect to the former, the district court denied class certification without providing any analysis of the factors relevant to class certification set forth in Fed. R. Civ. P. 23. Instead, the court focused entirely on the PLRA, reasoning that the relief plaintiffs sought was beyond its jurisdictional competence after the passage of the PLRA and that class certification is properly denied when the court lacks "the authority to order the prospective remedy requested." *Shook v. Bd. of County Comm'rs of County of El Paso*, 216 F.R.D. 644, 647 (D. Colo. 2003). We reversed. Noting that "[t]he text of the PLRA says nothing about the certification of class actions," though it does contain provisions discussing the administration of class actions once certified, we held that "the PLRA does not alter the class certification analysis under Rule

---

[1] Mr. Reinig and Ms. Elliott did not intervene until after this case was remanded to the district court, and thus their allegations were not before the district court when it issued its first order. In addition to the details of the named plaintiffs' experiences at the Jail, the various complaints contain allegations about a number of other inmates, some identified by name and others anonymous.

23." *Shook v. El Paso County*, 386 F.3d 963, 970 (10th Cir. 2004) ("*Shook I*"). And because the PLRA left the traditional Rule 23 class certification standards intact, we held that the district court, which had neither analyzed Rule 23(a)'s factors nor mentioned Rule 23(b)(2), "erred by not specifically addressing the traditional Rule 23 factors in denying class certification." *Id.* at 972. We thus remanded for the district court to apply the Rule 23 framework in the first instance. *Id.* at 974. Furthermore, recognizing that courts have disagreed over whether manageability, an explicit consideration under Rule 23(b)(3), may be considered in determining whether to certify a class pursuant to Rule 23(b)(2), we proceeded to hold that "manageability is not categorically barred in Rule 23(b)(2) class certification decisions,"*id.* at 973, and we suggested that some of the "concerns leading the court to consider problems of identifying and managing the class" in its PLRA analysis might be relevant to considerations explicitly identified in Rule 23 itself, such as, *inter alia*, Rule 23(a)'s commonality or typicality requirements or Rule 23(b)'s requirements that defendants have acted "on grounds generally applicable to the class" and that the court be able "to provide injunctive relief to the class framed in the complaint,"*id.* at 973-74.

Before the district court again, plaintiffs renewed their motion for class certification pursuant to Rule 23(a) and (b)(2), proposing a class comprised of "[a]ll persons with serious mental health needs who are now, or in the future will

- 7 -

be, confined in the El Paso County Jail." Aplt. App. at 193. Alternatively, plaintiffs proposed an even broader class consisting of "all persons who are now, or in the future will be, confined in the El Paso County Jail." *Id.* In their prayer for relief, plaintiffs sought an injunction establishing standards across a wide range of areas affecting mentally ill inmates. They asked that the Jail be enjoined to "provide sufficient numbers of mental health and custody staff, with adequate training"; "provide safe and appropriate housing for prisoners with serious mental health needs"; "discontinue the use of the 'special detention cells' to house prisoners exhibiting signs of mental illness"; "provide inpatient psychiatric care"; "cease using restraints, pepper spray, and electroshock weapons ('tasers') against prisoners exhibiting signs of mental illness in circumstances that pose a substantial risk of harm to such prisoners"; "implement an adequate system to provide appropriate medication to prisoners whose serious mental health needs require it and to monitor the effects of that medication"; and "provide adequate screening and precautions to prevent self-harm and suicide." *Id.* at 117-18.

The district court again denied class certification. This time, the court held that plaintiffs had failed to satisfy either Rule 23(a)(2), (a)(3) or (b)(2). *Shook v. Bd. of County Comm'rs of County of El Paso*, 2006 WL 1801379, at *1 (D. Colo. 2006) ("D. Ct. Op."). With respect to this last provision, the district court held that plaintiffs failed to bear their burden under Rule 23(b)(2) of showing that

defendants acted on grounds generally applicable to the class, such that the declaratory and injunctive relief sought is appropriate respecting the class as a whole. *Id*. In particular, the district court noted the factual differences between the individual named plaintiffs' situations, suggesting that because some plaintiffs were asserting claims for denial of medication, some for lack of supervision, and others for use of excessive force, there was no single policy or procedure to which all were subject. Similarly, the court held, this variation in fact patterns made injunctive relief on a class-wide basis inappropriate. *Id*. at *11. The court reasoned that many of the matters plaintiffs sought to have addressed, such as the use of tasers or restraints, could not be dealt with prospectively on a class-wide basis because the propriety of using such methods depended on the circumstances in which they were used, and those circumstances necessarily varied among class members. *Id*. And while some of the standards plaintiffs sought to have put in place did not depend on individual circumstance, the court expressed concern that it was not equipped to determine what constitutes "adequate" training or how many employees are "sufficient" to deal with a shifting number of mentally ill prisoners, *id*., and thus that it would be extraordinarily difficult to craft an injunction satisfying the specificity requirements of Fed. R. Civ. P. 65(d).[2]

---

[2] Rule 65(d)(1) provides that:
Every order granting an injunction and every restraining order must

(continued...)

Plaintiffs now appeal this decision, contending that the district court's second order suffers many of the same defects as its first.

II

When reviewing a decision to grant or deny certification, we are cognizant of the fact that, in this realm, the district court enjoys considerable discretion, and we may reverse a district court's decision only for an abuse of that discretion. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979); *Adamson v. Bowen*, 855 F.2d 668, 675 (10th Cir. 1988); Alba Conte and Herbert B. Newberg, 1 *Newberg on Class Action* § 3:1 (4th ed.) ("*Newberg*"). When applying an abuse of discretion standard of review, we necessarily recognize that there may be no single right answer to the question at hand, but a range of possible outcomes sustainable on the law and facts, and we will "defer to the district court's judgment so long as it falls within the realm of these rationally available choices." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007); *Big Sky Network Canada, Ltd. v. Sichuan Provincial Gov't*, 533 F.3d 1183, 1186 (10th Cir. 2008) (The abuse of discretion standard "may appear opaque, but it is one we have long understood to mean that we will reverse a district court's determination only if the court

---

[2](...continued)
(A) state the reasons why it issued;
(B) state its terms specifically; and
(C) describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required.

exceeded the bounds of the rationally available choices given the facts and the applicable law in the case at hand."); *In re Bueno*, 248 B.R. 581, 582 (D. Colo. 2000) (Kane, J.) (an abuse of discretion standard implies a degree of "[d]iscretion invested in judges [to render] a decision based upon what is fair in the circumstances and guided by the rules and principles of law").

In this case, we believe the district court's decision fell within the boundaries set out by Rule 23(b)(2), governing case law, and the facts as alleged.[3] While we very well may have made a different decision had the issue been presented to us as an initial matter, and while other district courts perhaps could have chosen, or could choose, to certify similar classes, we cannot say the district court's assessment was beyond the pale.

A

Rule 23(b)(2) provides that class certification is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). By its terms, then, Rule 23(b)(2) imposes two independent but related requirements. In the first place, the defendants' actions or inactions must be

---

[3] Because we hold the district court's denial of certification under Rule 23(b)(2) did not amount to an abuse of discretion, we need not address its alternative holding under Rule 23(a).

based on grounds generally applicable to all class members. The second requirement is more restrictive, and it is on this aspect of the Rule that we affirm the district court's ruling. The latter half of Rule 23(b)(2) requires that final injunctive relief be appropriate for *the class as a whole*. The rule therefore authorizes an inquiry into the relationship between the class, its injuries, and the relief sought, and we have interpreted the rule to require that a class must be "amenable to uniform group remedies." *Shook I*, 386 F.3d at 973. Put differently, Rule 23(b)(2) demands a certain cohesiveness among class members with respect to their injuries, the absence of which can preclude certification. *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007); *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1121 (8th Cir. 2005); *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998); *see also Newberg* § 4.11.

This cohesiveness has at least two aspects. First, the class must be sufficiently cohesive that any classwide injunctive relief can satisfy the limitations of Federal Rule Civil Procedure 65(d) – namely, the requirement that it "state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1); *Monreal v. Potter*, 367 F.3d 1224, 1236 (10th Cir. 2004). Second, "[a] class action may not be certified under Rule 23(b)(2) if relief specifically tailored to each class member would be necessary to correct the allegedly wrongful conduct of the defendant." 5 *Moore's*

*Fed. Prac.* § 23.43(2)(b) at 23-195 (3d. 2000). So, if redressing the class members' injuries requires time-consuming inquiry into individual circumstances or characteristics of class members or groups of class members, "the suit could become unmanageable and little value would be gained in proceeding as a class action." *Barnes*, 161 F.3d at 143. Indeed, it is precisely these types of manageability issues – relating to the district court's "ability to provide injunctive relief to the class framed in the complaint," *Shook I*, 386 F.3d at 974, a textually authorized consideration – that we held permissible in *Shook I*, *id.* at 973 ("Elements of manageability and efficiency are not categorically precluded in determining whether to certify a 23(b)(2) class."). And individual issues cannot be avoided simply by formulating an injunction at a stratospheric level of abstraction; as we have explained before, "injunctions simply requiring the defendant to obey the law are too vague to satisfy Rule 65." *Monreal*, 367 F.3d at 1236 (internal alterations omitted) (quoting *Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 895 F.2d 659, 668 & n.5 (10th Cir. 1990)). In short, under Rule 23(b)(2) the class members' injuries must be sufficiently similar that they can be addressed in an single injunction that need not differentiate between class members.

B

In their prayer for relief in this case, plaintiffs seek to have seven acts enjoined, *see supra* Section I, but a review of these acts illustrates how the

district court could (and did) reasonably conclude the putative class fails to satisfy Rule 23(b)(2)'s standards. The chief difficulty the district court identified is that much of the relief plaintiffs seek would require the district court to craft an injunction that distinguishes – based on individual characteristics and circumstances – *between* how prison officials may treat class members, rather than prescribing a standard of conduct applicable to *all* class members. For example, plaintiffs ask for an injunction compelling defendants to "cease using restraints, pepper spray, and electroshock weapons ('tasers') against prisoners exhibiting signs of mental illness in circumstances that pose a substantial risk of serious harm to such prisoners." Aplt. App. at 118. But by its very terms, this prayer for relief asks the district court to craft an injunction that takes into account the specific circumstances of individual inmates' plights. What specific mental illnesses place a prisoner at an inordinate risk from the use of the named implements? And under what circumstances is this risk exacerbated? Presumably the "circumstances that pose a substantial risk of serious harm" depend on the nature and severity of the individual's illness, but where a practice may only be enjoined by reference to circumstances that vary among class members – such as whether an individual inmate is both showing signs of mental illness and at particular risk from the use of tasers – class-wide relief may be difficult to come

by. Instead, different injunctions would be required to establish the appropriate behavior towards different groups of class members.

This same difficulty pervades many of plaintiffs' claims for relief. For example, plaintiffs seek an order requiring defendants to "provide safe and appropriate housing for prisoners with serious mental health needs." *Id.* But, as the district court observed, what is "safe and appropriate" depends on the nature and severity of an individual's mental illness, not simply on the fact that he is mentally ill. What is safe for Ms. Mosby, who is suicidal, may not be the same as for Mr. Shook, who merely requires delivery of his medication. Similarly, "adequate screening and precautions to prevent self-harm and suicide," *id.*, does not address a cohesive injury suffered by the class. Not all mentally ill people are suicidal, and so this form of relief is overly broad relative to the class as defined, and what constitutes "adequate" precautions against self-harm will necessarily turn on how and in what ways individual inmates are predisposed to harm themselves.

To be sure, plaintiffs also seek relief that in its implementation would not necessarily depend on individual circumstances. They seek an injunction aimed at requiring increased staffing levels, for example, as well as screening procedures to identify at-risk inmates. *Id.* at 117-18. They also seek an "adequate" system to provide "appropriate" medication to inmates and to monitor the effects of that

medication. *Id.* at 118. But it is here that plaintiffs run into the horn of Rule 65(d)'s specificity requirement. At the class certification stage, the injunctive relief sought must be described in reasonably particular detail such that the court can at least "conceive of an injunction that would satisfy [Rule 65(d)'s] requirements," as well as the requirements of Rule 23(b)(2). *Monreal*, 367 F.3d at 1236.[4] The problem in our case is that plaintiffs have eschewed any effort to give content to what it would mean to provide adequate mental health staff, adequate screening, or an adequate system for delivering medication. In order to satisfy Rule 65(d), the levels of services must ultimately be capable of description in a sufficiently objective way that both the defendant and the court can determine if the former is complying, *see Keyes*, 895 F.2d at 668, and a class certification motion requesting injunctive relief that simply prescribes "adequate" or "appropriate" levels of services fails to indicate how final injunctive relief may be

---

[4] Of course, this is not to say that plaintiffs are required to come forward with an injunction that satisfies Rule 65(d) with exacting precision at the class certification stage. *Monreal*, 367 F.3d at 1236 n.11. If anything, the degree of specificity with which plaintiffs must describe the injunctive relief requested becomes more exacting as the litigation progresses: the complaint need only be specific enough to satisfy our notice pleading standards; the class certification motion must be more specific, sufficient to allow the district court to see how it might satisfy Rule 65(d)'s constraints and thus conform with Rule 23(b)(2)'s requirement; and the motion for relief or proposed injunction must of course itself be specific enough to comport with Rule 65(d).

crafted to "describe[] in reasonable detail . . . the acts . . . required." Fed. R. Civ. P. 65(d).

Plaintiffs' effort is further complicated by the fluid nature of the class. The proposed class includes not only current inmates but future ones as well. In order to craft an enforceable injunction aimed at ensuring "adequate" staffing levels or medication delivery procedures, the district court would have to be able to ascertain the aggregate characteristics of the class as whole, and enforcing the injunction would require monitoring changes to those characteristics over time. Determining what constitutes adequate staffing and training at any given time, however, requires a wealth of information about the class not necessary in many other Rule 23(b)(2) class actions. How many inmates suffer from serious mental illness at any particular time? What specific illnesses are represented in the class, and in what numbers? What type of staffing and training is necessary to provide "adequate" care for the range of illnesses existing (or likely to exist) in the Jail population at any given time?

Of course, the sorts of problems highlighted by the district court may have been mitigated, or perhaps avoided, by the use of subclasses. Fed. R. Civ. P. 23(c)(5) provides that "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under this rule." Plaintiffs could have sought to define subclasses that were "amenable to uniform group remedies," and in so

doing, might have been able to create the cohesion among subclass members required by Rule 23(b)(2). For example, a subclass consisting of all inmates with a known history of suicidal tendencies that sought an injunction requiring visual or video monitoring might possibly solve some of the problems present in this case. Instead, by choosing to seek certification of a single broad class (all Jail inmates with mental health needs) and supplementing that proposed class definition with only one, even broader alternative (*all* Jail inmates) – without explaining how injunctive relief could deal with many variations within the class – plaintiffs effectively invited the district court's concerns about the appropriateness of class-wide relief.[5] *See* Robert G. Bone, *Who Decides? A Critical Look at Procedural Discretion*, 28 Cardozo L. Rev. 1961, 2020 (2007) ("Significant heterogeneity is generally thought to undermine class treatment and trigger stronger individual participation demands because it makes the class less cohesive. And one way to reduce heterogeneity is to create subclasses."). While

---

[5] In broadening the scope of the class, plaintiffs' alternative proposed class moves in the wrong direction. A class consisting of all present and future inmates introduces considerably more variation into the class with respect to the relief sought, raising further questions about whether injunctive relief is justified for the class as a whole. For example, injunctive relief aimed at more closely monitoring prisoners for risks of self-imposed harm seems overbroad when the class includes a majority of people who are not at risk from self-imposed harm. The broader class also raises concerns about whether defendants acted on "grounds that apply generally to the class," since many inmates presumably do not suffer from mental illness and thus are not subject to defendants' policies governing treatment of the mentally ill in any meaningful way.

the district court could have *sua sponte* suggested subclassing as a possible solution to Rule 23(b)(2) problems, the Supreme Court has indicated that courts do not bear any obligation to do so: the district court does not "bear the burden of constructing subclasses. That burden is upon the [party seeking certification] and it is he who is required to submit proposals to the court." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 408 (1980).

C

That the district court did not exceed the scope of its discretion in this case is borne out by the fact that we and other circuits have upheld highly similar decisions in the past. In *Monreal*, the plaintiffs, management-level Hispanic employees of the U.S. Postal Service, brought suit in their individual capacities alleging discrimination on the basis of race and national origin. 367 F.3d at 1226. They also claimed that the Postal Service engaged in a pattern or practice of discrimination against management-level Hispanic employees and that the application of Postal Service policies had a disparate impact on those employees. *Id*. In pursuit of the latter set of claims, plaintiffs sought to certify a class consisting of "all Hispanic persons who, at the time the discrimination occurred, were employees of the U.S. Postal Service . . . , who have suffered from race discrimination with respect to the terms and conditions of their employment." *Id*. at 1234. In their class action complaint, plaintiffs sought, among other things,

"*appropriate* declaratory and/or injunctive relief, including final injunctive relief" for a host of alleged discriminatory practices, including, to name a few, unjust promotion practices, inequity in compensation, unjust evaluations, and inequity in training. *Id*. at 1234-36 (emphasis added).

On appeal, we held that the district court did not abuse its discretion in refusing to certify a class pursuant to Rule 23(b)(2) because, due to "the breadth of the discriminatory actions alleged by Plaintiffs, we [could not] conceive of an injunction" that would be sufficiently specific to be enforceable. *Id*. at 1236. And while we went on to note that a plaintiff need not plead the relief he or she seeks with sufficient specificity to satisfy Rule 65(d), we held that the district court did not abuse its discretion because the "breadth and discontinuity of the acts" at issue made the case "ill-suited" for class-wide relief, particularly where the injunctive relief sought was only described as "appropriate." *Id*. at 1236 & n.11. The same critiques apply in this case. Plaintiffs seek to enjoin a wide range of behavior without having carried their burden of demonstrating that the acts to be enjoined do indeed have application to the very broad class framed in the complaint. And plaintiffs further phrase much of the injunctive relief sought in terms of "appropriateness," a term that gives neither a district court nor a reviewing court any indication as to how injunctive relief can be crafted to satisfy the specificity requirements of Rule 65(d).

Similarly, in *Maldonado*, our sister circuit affirmed a district court's decision not to certify under Rule 23(b)(2) a class consisting of uninsured patients challenging the billing and collection practices of a non-profit health care provider. 493 F.3d at 523. The gravamen of the plaintiffs' claim was that it was "unreasonable" for the health care provider to charge uninsured patients like the plaintiffs standard rates while offering discounts to patients with private insurance plans, Medicare, or Medicaid. *Id*. Noting that class-wide injunctive relief requires both that "class members must have been harmed in essentially the same way" and that "the injunctive relief sought must be specific," *id*. at 524, the court went on to hold that individualized issues relating to class members' injuries "overwhelm[ed] class cohesiveness," *id*. The difficulty the court identified related to the injunction the plaintiffs sought, which would have required the defendant to provide "mutually affordable health care" to class members and to refrain from charging uninsured patients a higher amount than that charged insured patients. *Id*. But, the court held, plaintiffs failed to carry their burden of identifying a method of determining, at a class level, what constituted a reasonable charge for a given service, let alone for the wide range of services encompassed by the plaintiffs' suit. *Id*. Whether a charge was reasonable would impermissibly depend on "the specific circumstances of each class member," and plaintiffs were "unable to explain how a court could define or

enforce meaningful injunctive relief," without getting into the weeds of individual circumstance. *Id*. at 524-25.

Our case presents exactly these same problems. Like the plaintiffs in *Maldonado*, plaintiffs here seek an injunction ordering a wide range of behavior conformed to an essentially contentless standard, bounded only by reference to ambiguous terms like "reasonable" behavior or "adequate" treatment. While we do not propose that plaintiffs must come forward with a finished injunction at the class certification stage, they must be able to demonstrate that such injunctive relief – relative to the class – is conceivable and manageable without embroiling the court in disputes over individualized situations and constantly shifting class contours. *See also* Angela C. Zambrano & Kent Barnett, *Putting the Cart Before the Horse: Should a Court Certify a Class of Residential Consumers Seeking a Declaration that the Consumers – If They Later Choose – Are Entitled to Rescind for a TILA Violation?*, 125 Banking L. J. 160 (2008) (arguing that individual issues destroy the necessary class cohesiveness in a (b)(2) action when class members' entitlement to the relief sought depends on individual circumstance); Thomas M. Byrne*, Class Actions*, 58 Mercer L. Rev. 1171, 1173 (2007) (noting that where "differences in proof or individualized issues exist pertaining to each

class member, courts have rejected certification . . . [for] failure to meet Rule 23(b)(2)'s requirement that relief apply to the class as a whole.").[6]

It is precisely these features that distinguish our case from the many and diverse civil rights cases whose certifications we have upheld and will continue to uphold. For example, in *Milonas v. Williams*, we affirmed the district court's certification of a class consisting of all current and future students at the Provo Canyon School. 691 F.2d 931, 936 (10th Cir. 1982). The plaintiffs in *Milonas* sought to enjoin a number of practices used at the school, including excessive force and the use of isolation cells, and the district court granted the injunction.

---

[6] Similarly, in *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323 (S.D.N.Y. 2002), the district court denied class certification of a Rule 23(b)(2) class consisting of private residential well owners scattered across four states claiming that the defendant oil companies had contaminated their well water. *Id*. at 328. The plaintiffs' requested injunctive relief included requiring the defendants to provide "clean water" to class members and "provide remediation of contaminated wells." *Id* at 344. Reasoning that if individual issues pervade the entire action "the suit could become unmanageable," *id*. at 343, the court proceeded to identify multiple individual issues that would have to be addressed by any injunction. For example, what constituted "clean" water would necessarily depend on the individual plaintiffs' intended use for the water as well as "how the contamination affects each plaintiff." *Id*. at 344. Similarly, successful remediation pursuant to an injunction would necessarily depend on the individual circumstances resulting in contamination. *Id*. The plaintiffs attempted to get around this problem by arguing that the court could "fashion an order setting forth broad guidelines" for the defendants to follow. *Id*. at 345. But, just as here, such "broad guidelines" failed to satisfy the limits on injunctive relief contained in Rule 65(d). *Id*. *See also Heffner v. Blue Cross and Blue Shield of Ala., Inc.*, 443 F.3d 1330 (11th Cir. 2006) (vacated a class certification order because the proposed class failed to satisfy the second half of Rule 23(b)(2)).

*Id*. at 935. Similarly, in *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181 (10th Cir. 1975), we reversed a district court's denial of class certification in a case alleging that a hospital denied Native Americans medical care on account of their race. *Id*. at 1183. In both cases, the relief the plaintiffs sought did not require the district court to ascertain detailed information about class members. For purposes of designing and enforcing an injunction, whether someone was a member of the class and had been subject to, for example, confinement in an isolation room, was easily determinable. Neither did the injunctions fail for lack of specificity; the plaintiffs did not describe the acts to be enjoined in terms of "adequacy" or "reasonableness," but concretely asked that the defendants be ordered to cease certain behaviors, such as confining students in isolation cells or considering race in deciding whether to treat a patient. It is precisely the lack of such concrete characteristics that distinguishes our case from the mine run of civil rights class actions we have upheld under Rule 23.

Plaintiffs point out that in cases brought by the U.S. Department of Justice contesting mental health treatment in certain jails, other district courts have granted injunctive relief similar to the relief they seek. *See, e.g.*, *United States v. Terrell County*, No. 04-cv-00076-WLS (M.D. Ga. Dec. 21, 2007); *United States v. Dallas County*, No. 307-cv-1559-N (N.D. Tex. Nov. 6, 2007). But these cases, in which the United States is the plaintiff, do not as a threshold matter have to

satisfy Rule 23(b)(2)'s requirements. Such suits are instead brought pursuant to the Attorney General's statutory authority to pursue cases involving "egregious or flagrant conditions which deprive [institutionalized] persons of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States" and which result from a "pattern or practice of resistance to the full enjoyment of such rights." 42 U.S.C. § 1997a. While the statute places some preconditions on the Attorney General's ability to bring suit, such as, *inter alia*, a requirement that the Attorney General first notify state officials of the allegedly illegal conditions, 42 U.S.C. § 1997b, the statute places no conditions similar to those placed on private class actions by Rule 23. Moreover, the statute in question explicitly disclaims any effort to "expand or restrict the authority of parties other than the United States to enforce the legal rights which they may have," 42 U.S.C. § 1997j, highlighting the fact that the United States' ability to bring such suits cannot lift the restrictions imposed by Rule 23 on private plaintiffs' ability to bring suit. Simply put, the salutary fact that other avenues may be available to address inappropriate mental health conditions does not mean that Rule 23 class actions must also always be available.

In a similar vein, plaintiffs point out that another district court judge in the same district in which plaintiffs filed their suit has recently certified a class similar to the one plaintiffs seek to have certified in a suit challenging similar

practices at a different institution. *See Vandehey v. Vallario*, 2008 WL 697428 (D. Colo. March 13, 2008), *appeal docketed*, No. 08-502 (10th Cir. March 28, 2008). Without in any way commenting on the merits of the appeal in that matter, the fact that other courts might reach conclusions different from that reached by the district court in this case is not dispositive in our case. Our inquiry is limited to asking whether the district court's decision "exceeded the bounds of permissible choice," a standard that, as we have already emphasized, acknowledges the possibility that polar opposite decisions may both fall within the "range of possible outcomes the facts and law at issue can fairly support." *McComb*, 519 F.3d at 1053. And, as we have indicated, there is sufficient support in the Rule and applicable case law to indicate that the district court's decision in this case, while perhaps not the only tenable one, or one even we would ourselves have made, was permissible.

Plaintiffs also place significant reliance on the argument that Rule 23(b)(2) classes are generally "well suited" to civil rights cases. We agree entirely. Rule 23(b)(2) was drafted in significant measure to enable civil rights class actions. *See Rules Advisory Committee Notes to 1966 Amendments to Rule 23*, 39 F.R.D. 69, 102. And we have upheld and will frequently uphold such lawsuits. But the Supreme Court has also instructed us that, while "[w]e are not unaware that suits [alleging violations of civil rights] are often by their very nature class suits,

involving classwide wrongs. . . .[,] careful attention to the requirements of Fed. Rule Civ. Proc. 23 remains nonetheless indispensable. The mere fact that a complaint alleges [violation of a civil right] does not in itself ensure" that Rule 23's requirements are satisfied. *East Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 405 (1977). In other words, that many civil rights actions may properly proceed under Rule 23(b)(2) does not mean that we may assume that all such actions should so proceed; putative class actions still must satisfy the express requirements of Rule 23, and the district court reasonably held that this class action was more like our decision in *Monreal* than those in *Milonas* or *Penn*.

Neither does the inability of plaintiffs to have *this particular class* certified defeat their ability to have these issues reviewed either individually or even through the class action mechanism. Individually or in joined actions, *see* Fed. R. Civ. P. 19-20, prisoners remain free to bring damages claims against defendants for unconstitutional harm they suffer while in custody of the Jail. Such actions would allow a court to pass judgment on whether defendants' conduct amounted to deliberate indifference with respect to individual inmates. And, to be sure, damages actions, by sanctioning past conduct, can incentivize a defendant to modify its future conduct. Different named plaintiffs are of course also free to pursue another class action, defining a class (or subclasses) for whom relief is deemed more manageable, within the bounds of the district court's discretion.

After all, to the extent that the denial of class certification can have preclusive effect on unnamed class members, *see In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 333 F.3d 763 (7th Cir. 2003) (giving preclusive effect to the denial of class certification as against unnamed class members); *Bailey v. State Farm Fire and Cas. Co.*, 414 F.3d 1187, 1190 (10th Cir. 2005) (noting that "[m]any of the principles articulated in *Bridgestone/Firestone* are sound"), the failure to certify this specific class hardly has preclusive effect on different plaintiffs in a future suit seeking certification of a different class or seeking different relief.  The only question we pass on today is the narrow question whether the relationship between the class proposed and the relief sought in this suit satisfies Rule 23(b)(2).

### III

Despite the district court's express consideration of Rule 23's requirements, plaintiffs assert that the district court included extraneous and legally erroneous discussion in its opinion, the inclusion of which amounts to reversible error.  Specifically, they charge that the district court disregarded our opinion in *Shook I* by (A) relying on the difficulties in identifying members of the class as a basis for denying certification; (B) prematurely evaluating the merits of plaintiffs' claims; (C) and continuing to rely on the PLRA's limitations on relief as an alternative basis for denying certification.  Whether the district court applied the correct

legal framework in its class certification decision is a legal question, and thus we review plaintiffs' claims on this score *de novo*. *Shook I*, 386 F.3d at 967. And of course, as we have explained many times, even when a decision – such as class certification – is committed to the district court's discretion, the district court necessarily abuses that discretion when its decision depends on a legal error. *McComb*, 519 F.3d at 1054. We address each of plaintiffs' claims below and conclude that – while the district court should have excised the PLRA from its discussion of class certification – it also amply explained how its concerns intersect with the constraints of Rule 23. We therefore find that the district court did not commit the same legal errors for which we reversed its prior order.

A

In *Shook I*, we held that difficulties identifying class members could not defeat certification under Rule 23(b)(2) because, while Rule 23(c)(2) explicitly authorizes courts to consider problems identifying class members in (b)(3) class actions insofar as such difficulties are relevant to providing notice to class members, there is no similar authorization for (b)(2) actions. 386 F.3d at 972. The difference, we observed, is that Rule 23(c)(2) makes notice mandatory for (b)(3) classes but optional for (b)(2) classes, and thus concerns relevant to providing notice – such as identifiability – are not properly part of the (b)(2) calculus. *Id*. We went on to hold, however, that "the factual and legal concerns

leading the court to consider problems of identifying" the class could be relevant to, among other things, whether final injunctive relief was appropriate within the meaning of Rule 23(b)(2). *Id*. at 973-74.

Our holding reflected how difficulties in determining the contours of a class can be relevant to both parts of Rule 23(b)(2)'s test. For example, where the outer boundaries of a class are indefinite, a court may not be able to ascertain whether a defendant acted on generally applicable grounds. Similarly, if determining whether the injunctive relief sought is appropriate for the class as a whole requires some knowledge about the characteristics of the class or variation within the class – such as, for example, its approximate size or the distribution of individuals within the class possessing certain traits – difficulties in estimating these characteristics may properly preclude certification. Put differently, difficulties in identifying characteristics of the class can prevent plaintiffs from carrying their burden of showing that "final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Here, the district court's order evinces just these sorts of concerns. It expressed concern not with potential problems identifying *individual* class members for purposes of notification – a consideration relevant only to Rule 23(b)(3) actions – but with problems associated with identifying *characteristics* of the class essential to determining whether class-wide relief is appropriate. For

example, given the "many varieties and degrees of mental disorders," the district court expressed concern with how *the Jail*, not the court, would be able to identify members of the class, and the specific treatments their individual maladies required, in a way that would allow the Jail to comply with any relief obtained or the court to monitor the Jail's compliance with such relief. D. Ct. Op. at *7-8. Considerations along these lines are permissible under Rule 23 and consistent with our decision in *Shook I.*

B

Plaintiffs' argument that the district court prematurely considered the merits of their claims fails for similar reasons. It is of course true that Rule 23 does not give "a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). The Supreme Court has been equally clear, however, that there is not an impermeable wall between the substance of a cause of action and the decision to certify the class. "[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Gen. Tel. Co. Of Southwest v. Falcon*, 457 U.S. 147, 160 (1982). In other words, while a district court may not evaluate the *strength* of a cause of action at the class certification stage, it must consider, without passing judgment on whether

plaintiffs will prevail on the merits, whether remedying the harm alleged can be done on a class-wide basis in conformity with Rule 23(b)(2). *See Eisen*, 417 U.S. at 178 ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004) ("[W]hile an evaluation of the merits to determine the strength of plaintiffs' case is not part of Rule 23 analysis, the factors spelled out in Rule 23 must be addressed through findings, even if they overlap with issues on the merits."). *But see* Robert G. Bone & David S. Evans*, Class Certification and the Substantive Merits*, 51 Duke L. J. 1251 (2002) (arguing that because the decision to certify a class is often effectively dispositive by forcing settlement, district courts should be authorized to consider the merits of class claims at the certification stage).

The district court in this case cited precisely these types of concerns, averring to the "highly individualistic and case specific" nature of the inquiry it was being asked to undertake, D. Ct. Op. at *5, as well as its view that "[c]ompliance with class-wide injunctive relief would be impossible to monitor, if it would even be possible to enter an order meeting the requirements of Rule 65(d)," *id*. at 7. Such concerns, far from impermissibly touching on the merits of plaintiffs' suit, go directly to the heart of the inquiry under Rule 23(b)(2) into the

relationship between the class proposed and the relief sought. Indeed, to the extent that the district court commented on the merits of plaintiffs' claims at all, it was to express the view that on the facts alleged the individual plaintiffs have a strong case: "The facts alleged in the complaints could support individual claims for relief, but those allegations do not show that final injunctive relief or declaratory relief with respect to the class as a whole is appropriate." D. Ct. Op. at 11. The difficulty, then, in the district court's view was not the likelihood of success on the merits, which the district court seemed to feel was relatively high – it was a deficiency in plaintiffs' showing under Rule 23(b)(2).

## C

Finally, we confess that we are as surprised as plaintiffs that on remand the district court continued to rely as an alternative ground for denying class certification on "the inability of the court to fashion the remedy requested, given the . . . the jurisdictional limitations imposed by the [PLRA]." *Id.* at 4. Our holding in *Shook I* was plain: "Congress did not intend the PLRA to alter class certification requirements under Rule 23." *Shook I*, 386 F.3d at 971. In light of *Shook I*, any reference at the class certification stage to the PLRA's limitations on the district court's ability to grant relief was error. Having said that, however, we are nevertheless obliged by our own case law to consider all of the district court's alternative holdings. *See, e.g.*, *Murrell v. Shalala*, 43 F.3d 1388, 1389 (10th Cir.

1994). As we have said before, "[w]hatever the particular result in any given case, the use of alternative dispositions generally benefits everyone; [it] relieves a pressing work load by resolving cases thoroughly once; the courts avoid successive, piecemeal appeals; and litigants are spared the protracted delays that result when a case drags on incrementally."[7] *Id.* Thus, no matter how erroneous one alternative disposition, we still must bring our dispassionate analysis to each alternative ruling made by the district court.

And here, the district court's independent analysis of Rule 23, separate and apart from its continued reliance on the PLRA, stands as a sufficient and appropriate basis for affirmance. In *Shook I*, we identified the district court's error as "not specifically addressing the traditional Rule 23 factors in denying class certification," 386 F.3d at 972, noting that the district court "did not address Rule 23(b)(2)" in its order at all, *id.* at 968. As we have discussed above, the district court remedied that deficiency in its second order, extensively analyzing the requirements of Rule 23(a) and (b)(2) and finding those requirements not met. Moreover, in its latter opinion the Rule 23 discussion constituted the bulk of the

---

[7] Indeed, we have gone so far as to hold that where a district court's disposition rests on alternative and adequate grounds, a party who, in challenging that disposition, only argues that one alternative is erroneous necessarily loses because the second alternative stands as an independent and adequate basis, regardless of the correctness of the first alternative. *Murrell*, 43 F.3d at 1389-90; *Berna v. Chater*, 101 F.3d 631, 633 (10th Cir. 1996).

district court's analysis; its discussion of the PLRA was limited to stray references. Such an effort is starkly different from that offered by the district court in support of its first order. It demonstrates an engagement with the analytical framework set up by Rule 23, and as we have said before, "[t]here is no abuse of discretion when the trial court applies the correct criteria [under Rule 23] to the facts of the case." *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1287 (10th Cir. 1999). We thus are constrained to affirm the district court based on the legal adequacy of its Rule 23 analysis, despite its erroneous alternative PLRA discussion.

* * *

Rule 23(b)(2) authorizes an inquiry into the relationship between the class framed in the complaint and injunctive relief requested. A district court does not abuse its discretion in denying class certification where providing the requested relief at the level of specificity required by Rule 65(d) would render a class action unmanageable – either because of difficulties in determining relevant aggregate characteristics of the class or because factual differences between class members require different standards of conduct for undefined groups within the class. The judgment of the district court is therefore

*Affirmed.*