Pamela MILLER; Randy Howard; and Donna Patterson; on behalf of themselves and all others similarly situated, Plaintiffs,

v.

BASIC RESEARCH, LLC; Dynakor Pharmacal, LLC; Western Holdings, LLC; Dennis Gay; Daniel B. Mowrey, Ph.D.; Mitchell K. Friedlander; and Does 1 through 50, Defendants.

No. 2:07–CV–871 TS.

United States District Court,
D. Utah,
Central Division.

Sept. 2, 2010.

---

Daniel R. Lapinski, Kevin Peter Roddy, Wilentz Goldman & Spitzer PA, Woodbridge, NJ, James C. Shah, Nathan C. Zipperian, Scott R. Shepherd, Shepherd Finkelman Miller & Shah LLP, Media, PA, Jon V. Harper, Anderson & Karrenberg, Salt Lake City, UT, James E. Miller, Laurie Rubinow, Shepherd Finkelman Miller & Shah LLP, Chester, CT, for Plaintiffs.

Aida Neimarlija, Richard D. Burbidge, Andrew Dymek, Jefferson W. Gross, Burbidge Mitchell & Gross, Salt Lake City, UT, Kenneth M. Kliebard, Morgan Lewis & Bockius LLP, Chicago, IL, for Defendants.

## MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION TO CERTIFY THE CLASS AND DENYING DEFENDANTS' MOTION TO STRIKE

TED STEWART, District Judge.

This matter is before the Court on Plaintiffs' Motion to Certify the Class and Defendants' Motion to Strike the declaration of Dr. Elaine Barrett. Plaintiffs propose class certification under Rule 23(b) for a nationwide class consisting of consumers who purchased Akävar 20/50. For the purposes of class certification, Plaintiffs allege violations of Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Utah Pattern of Unlawful Activity Act ("UPUAA"), and the Utah Consumer Sales Practices Act ("UCSPA").[1] For the reasons discussed below, the Court will grant Plaintiffs' motion and deny Defendants' motion.

### I. Facts

Plaintiffs allege that Defendants operate a common business enterprise engaged in fraudulent and deceptive acts in relation to the marketing and advertising of Akävar.[2] Plaintiffs allege that the common business enterprise is controlled by Defendants Gay, Mowrey and Friedlander.[3]

Plaintiff Pamela Miller is a resident of Gilbert, Arizona. Plaintiff Miller purchased Akävar during the summer of 2007 through Defendants' website based on an advertisement she stumbled across on the internet with "EAT ALL YOU WANT & STILL LOSE WEIGHT," in bold print.[4] Plaintiff Miller alleges that after 25 days of taking Akävar as directed on the package labeling, she gained 10 pounds.[5]

Plaintiff Randy Howard is a resident of Morton, Illinois. Sometime around October 2007, he observed an Akävar in-store display, at a Wal–Mart, representing that users of Akävar could "Eat All You Want and Still Lose Weight."[6] Plaintiff Howard recalls the display stressed that users could lose weight without changing their eating habits.[7] Plaintiff Howard asserts that he purchased Akävar based on the representations on the display.[8] He further alleges that after two weeks of taking Akävar as directed on the package labeling, and without changing his eating habits, he gained five or six pounds and stopped taking the supplement.[9]

Plaintiff Donna Patterson, is a resident of Washington, DC.[10] Sometime around August 2007, Plaintiff Patterson alleges she observed an Akävar advertisement in a national women's magazine.[11] Plaintiff Patterson alleges the advertisement contained an image of a female model, touting Akävar as the new "European Weight Loss Breakthrough," and stated that you could "Eat All You Want & Still Lose Weight."[12]

Defendants began marketing and selling Akävar in February 2007.[13] Defendants state that, from the original introduction until the time the action was filed, Akävar's marketing and advertisements have gone through several revisions so that the most recent version is "markedly" different than the original.[14] De-

---

1. Plaintiffs do not seek certification of their fraud and negligent misrepresentation claims.

2. Amended Complaint, Docket No. 50 at ¶ 1.

3. *Id.* at ¶ 4.

4. Docket No. 50 at ¶ 10.

5. *Id.*

6. *Id.* at ¶ 11.

7. *Id.*

8. *Id.*

9. *Id.*

10. *Id.* at ¶ 12.

11. *Id.*

12. *Id.*

13. Memorandum in Opposition, Docket No. 128 at xx, ¶ 42.

14. *Id.*

fendants state, for example, that the presentation of the claim "Eat all you want and still lose weight," changed from bold print to a passing representation in connection with skepticism and, as of the date of their memorandum, was not referenced at all.[15]

Although Defendants do not state the number of customers overall who have purchased Akävar, they do state that at least 20,006 of those who have purchased Akävar have requested and received cash refunds.[16] Defendants state that at least 9,809 customers have been repeat purchasers.[17] Defendants state that there would be "thousands upon thousands of proposed class members."[18] Defendants state that although they used three principal websites to market and advertise Akävar they all contained the exact same content at any given time.[19] Defendants state that other retailers also sold Akävar on their websites and that they were not responsible for the content on these third party websites.[20]

Defendant Basic Research is a limited liability company established under Utah law.[21] Defendant Basic Research claims to be one of the largest neutraceutical companies in the United States with annual sales revenues in excess of $50 million.[22] Defendant Basic Research develops, manufactures, and markets a variety of cosmetics, nutritional supplements, and dietary supplements each marketed under a variety of limited liability companies formed by Defendants, but controlled by Defendants Gay, Mowrey and Friedlander. Plaintiffs allege that Defendant Basic Research is affiliated with all of the limited liability companies that it markets its products under, and additionally does business under different trade names including: Western Holdings, Dynakor, NutraSport, Silver Sage, Klein–Becker USA, Urban Biolo-

gies, Alpha Gen Biotech, Sovage Dermalogic and Body Innoventions, AG Waterhouse and BAN. Plaintiffs allege that Defendant Basic Research creates a new limited liability company for each dietary supplement it manufactures, advertises, and sells to consumers, and that the employees of each are used interchangeably between them.

Plaintiffs allege that although Defendants asserted Akävar was a "New! European Weight Loss Breakthrough," whose "results" were based on "scientific fact, documented by published medical findings," and that "a team of doctors working in a recognized medical university discovered the potent caloric-restricting qualities," Akävar was actually developed in Salt Lake City, Utah by Defendants' own employees.[23] Specifically, Plaintiffs allege that Defendant Mowrey is the "Director of Scientific Affairs," that he does business as American Phytotherapy Research Laboratory, now DBM Enterprises, and that the sole purpose of such entity is to work for Defendants Gay, Friedlander and Basic Research.[24] Accordingly, Plaintiffs allege that Defendants use the same or similar dietary supplement, make the same claims about each supplement and merely change the packaging and the entity it is marketed under.[25] Moreover, Plaintiffs allege that all of Defendants products are based on the combination of the same herbs, guarana, yerba mate and damiana, and a preliminary Danish study reported in 2001.[26]

In June of 2006, the United Stated Federal Trade Commission ("FTC") issued a permanent injunction against all Defendants prohibiting the marketing and sale of alleged weight loss products unless competent and reliable scientific evidence support the claims

15.  *Id.* at ¶¶ 43–44.

16.  *Id.* at ¶ 46.

17.  *Id.* at ¶ 49.

18.  Defendants' Memorandum in Opposition, Docket No. 128 at vi.

19.  *Id.* at ¶ 51.

20.  *Id.* at ¶ 52.

21.  *Id.* at ¶ 13.

22.  *Id.*

23.  *Id.* at ¶ 77.

24.  Docket No. 50 at ¶ 55.

25.  *Id.* at ¶¶ 16, 56.

26.  *Id.* at ¶¶ 65, 67.

made about such products.[27]

Defendant Western Holdings licenses trademarks including, the phrase in question, "Eat All You Want & Still Lose Weight," "and we couldn't say it in print," and "we couldn't say it in print if it wasn't true," to Defendant Basic Research for the development and manufacturing of cosmetics, nutritional supplements and dietary supplements.[28]

## II. Class Certification

### 1. Standard of Review

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." [29] "A district court may certify a class if the proposed class satisfies the requirements of Rule 23(a) and the requirements of one of the types of classes in Rule 23(b)." [30] "The party seeking class certification bears the burden of proving Rule 23's requirements are satisfied." [31] "The district court 'must accept the substantive allegations of the complaint as true' though it 'need not blindly rely on conclusory allegations of the complaint which parrot Rule 23' and 'may consider the legal and factual issues presented by plaintiff's complaints.' " [32] "While the court should not pass judgment on the merits of the case at the class certification stage, it must con-duct its own 'rigorous analysis' to ensure Rule 23's requirements are met." [33]

Rule 23(a) states:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.[34]

Numerosity exists if the proposed class is "so numerous that joinder of all class members is impracticable." [35] Courts use common sense assumptions to support a finding of numerosity.[36] "A finding of commonality requires only a single question of law or fact common to the entire class." [37] "Mere allegations of systematic violations of the law, however, will not automatically satisfy Rule 23(a)'s commonality requirement; a discrete legal or factual question common to the class must exist." [38] However, "every member of the class need not be in a situation identical to that of the named plaintiff to meet Rule 23(a)'s commonality or typicality requirements." [39] "Factual differences between

**27.** *Id.* at ¶ 17; *In the Matter of Basic Research, L.L.C., A.G. Waterhouse, L.L.C., Klein–Becker USA, L.L.C., NutraSport, L.L.C., Sovage Dermalogic Laboratories, L.L.C., BAN, L.L.C., d/b/a/ Basic Research, L.L.C., Old Basic Research, L.L.C., Basic Research, A.G. Waterhouse, Klein–Becker USA, Butra Sport, and Sovage Dermalogic Laboratories, Dennis Gay, Daniel B. Mowrey, d/b/a/ American Phytotherapy Research Laboratory, and Mitchell K. Friedlander,* FTC Docket No. 9318 (June 19, 2006). Defendants did not begin marketing Akävar until 2007, so Akävar specifically was not mentioned in the Order.

**28.** Docket No. 50 at ¶ 23.

**29.** *DG v. Devaughn,* 594 F.3d 1188, 1193 (10th Cir.2010) (quoting *Shook v. El Paso County,* 386 F.3d 963, 971 (10th Cir.2004) (internal citations omitted)).

**30.** *Id.* at 1194.

**31.** *Id.* (citing *Shook,* 386 F.3d at 968).

**32.** *Id.* (citing *Shook,* 386 F.3d at 968) (quoting *J.B. ex rel. Hart v. Valdez,* 186 F.3d 1280, 1290 n. 7 (10th Cir.1999)).

**33.** *Id.* (quoting *Shook,* 386 F.3d at 968).

**34.** FED R.CIV.P. 23(a)(1)–(4).

**35.** *Id.* at (1)–(4).

**36.** *Ditty v. Check Rite, Ltd.,* 182 F.R.D. 639, 641 (D.Utah 1998).

**37.** *DG,* 594 F.3d at 1195 (citing *J.B.,* 186 F.3d at 1288).

**38.** *Id.*

**39.** *Id.* (quoting *Milonas v. Williams,* 691 F.2d 931, 938 (10th Cir.1982)).

class members' claims do not defeat certification where common questions of law exist."[40]

▮ "The interests and claims of Named Plaintiffs and class members need not be identical to satisfy typicality."[41] As long as the claims of the Named Plaintiffs and class members "are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality."[42] "[L]ike commonality, typicality exists where, as here, all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances."[43]

### 2. Discussion

Plaintiffs seek to certify the following class: "All persons in the United States who purchased, for consumption and not for resale or assignment, Akävar 20/50 from a retail sales establishment, directly from Defendants, or from a website controlled or operated by Defendants." Excluded from the Class are Defendants, their directors, officers, employees and immediate family members in addition to any person claiming damages for personal injury. Plaintiffs' proposed class action seeks to redress Defendants unlawful practices of marketing, advertising and selling the purported weight loss "miracle" Akävar. Plaintiffs argue the proposed class action meets the requirements of Rule 23(a) because the class consists of thousands of consumers; common issues exist as to the truth or falsity of Defendants' claims about Akävar; the proposed class representatives are typical of class members; and Plaintiffs and their counsel are adequate representatives with experience in litigating this

type of claim.[44] Specifically, Plaintiffs state that the common question of fact common to all members is that they all bought Akävar after reading, seeing, or being exposed to some sort of advertisement promising with the pill they could "eat all they wanted and still lose weight."[45]

Defendants argue that the class must not be certified for two reasons. First, Utah law prohibits class actions involving state or local law relating to consumer transactions unless certain preconditions are met and Defendants argue none of those conditions have been met in this case. Second, Defendants argue that Plaintiffs have failed to show that the Rule 23 requirements of certification are satisfied.

### A. Utah Consumer Sales Practices Act

▮ Defendants argue that Utah's Consumer Sales Practices Act ("UCSPA") bars the certification of the class action.[46] Defendants argue that Section 13–11–19 of the UCSPA allows for a class action remedy only in three limited situations: 1) an act or practice specified as violating the UCSPA by a rule adopted under Subsection 13–11–8(2) before the consumer transaction on which the action is based; 2) the action has been declared to violate Section 13–11–4 or 13–11–5 by a final judgment of an appropriate court and was reported or made available for public dissemination under Subsection 13–11–7(1)(c) by the enforcing authority ten days before the consumer transactions on which the action is based; or 3) with respect to a supplier who agreed to it, was specifically prohibited by a consent judgment which was finalized before the consumer transaction

---

**40.** *Id.* (citing *Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181, 1189 (10th Cir.1975)).

**41.** *Id.* at 1199 (citing *Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir.1982)).

**42.** *Id.* at 1198–99.

**43.** *Id.* at 1199.

**44.** Plaintiffs also seem to begin arguing the merits of their case which they argue later in their memorandum, in regards to Defendants attempts to confuse the issues by doing the same, is inappropriate at this juncture.

**45.** *See* Howard Depo. Tr. at 21:21–25; 22:1–2 ("I could continued to eat what I had and still lose the weight"); Patterson Depo. Tr. at 33:24–34 ("That it ... automatically makes you lose weight when you take it without exercise and restricting your intake of food").

**46.** Utah Code Ann. § 13–11–1 *et seq.;* Utah Code Ann. § 13–11–23 ("The remedies of this act are in addition to remedies otherwise available for the same conduct under state or local law, except that a class action relating to a [consumer transaction] may be brought only as prescribed by this act.").

upon which the action is based.[47] Defendants state that the Utah laws are based on Section 11 of the Uniform Consumer Practices Act whose purpose is to ensure "that a supplier ha[s] notice of potential class action damages liability through the occurrence of one or more preconditions."[48]

Defendants further state that because the Utah Division of Consumer Protection has not specified that Defendants' Akävar advertisements violate the UCSPA, nor has there been any final judgment stating the same, the preconditions are not met and Plaintiffs are therefore unable to bring a class action.

Plaintiffs counter that although Defendants specifically state there are three exceptions under Section 13–11–19, they disregard the third exception authorizing consumer class actions when plaintiffs allege a wrongful "act or practice" that was prohibited by the terms of a consent judgment before the transaction upon which the action was based.[49] Plaintiffs state, as noted in their allegations, that Defendants have historically engaged in the misleading practice of advertising weight loss products without scientific basis and, as a result, the FTC investigated and brought an enforcement action against Defendants resulting in an Agreement Containing Consent Order concerning the marketing of Akävar.[50] Because this action arises out of Defendants' conduct in the marketing of Akävar, Plaintiffs argue that the third prong of Section 13–11–19 has been satisfied.

The FTC Order states:

[Defendants], directly or through any corporation, subsidiary, division, or other devise, in connection with manufacturing, labeling, advertising, promotion, offering for sale, sale or distribution of any food, drug, dietary supplement, in or affecting commerce, shall not make any representation, in any manner, expressly or by implication,

including through use of trade names or endorsements, about the effect of such food, drug or dietary supplement on any disease, or about the effect of such food, drug or dietary supplement on the structure or function of the human body or other health benefits or weight loss benefits, unless at the time the representation was made respondents possess and rely upon a reasonable basis for the representation, which shall consist of competent and *reliable* scientific evidence.[51]

[Defendants], directly or through any corporation, subsidiary, division, or other devise, in connection with manufacturing, labeling, advertising, promotion, offering for sale, sale or distribution of any product, service or program in or affecting commerce, shall not misrepresent, in any manner, expressly or by implication, including through the use of endorsements or trade names, the existence, contents, validity, results, conclusions, or interpretations of any test, study or research.[52]

The FTC Order defines "[c]ompetent and reliable scientific evidence" as "mean tests, analyses, research studies, or other evidence based on the expertise of professionals in the relevant area, that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results."[53]

Plaintiffs allege Defendants have and continue to engage in unlawful practices of marketing, advertising and selling Akävar as the ultimate cure for fat, despite the absence of any evidence of clinical or scientific support. Because this type of behavior, if true, is prohibited by the FTC Order, the Court finds Plaintiffs' claim meets the specific exception under the third prong of Section 13–11–19(4) and is therefore not barred by the

---

**47.** Utah Code Ann. § 13–11–19(4)(a).

**48.** Uniform Consumer Sales Practices Act § 11; *see also Workman v. Nagle Constr., Inc.*, 802 P.2d 749, 755 (Utah Ct.App.1990); *Marrone v. Philip Morris USA, Inc.*, 110 Ohio St.3d 5, 850 N.E.2d 31, 34, 36 (2006).

**49.** Utah Code Ann. § 13–11–19.

**50.** Docket No. 50, Ex. C.

**51.** *Id.* at 4.

**52.** *Id.* at 5.

**53.** *Id.* at 4.

statute. Consequently, the Court will now turn to the requirements of Rule 23.

## B. Rule 23

### i. Rule 23(a)

■ Plaintiffs argue that they meet all the requirements of Rule 23(a) and thus should be permitted to pursue their claim in a class action. Defendants acknowledge that at least 29,850 customers have purchased Akävar directly from them.[54] Defendants also state that because Akävar is sold through numerous channels it is impossible to know how many people have bought and returned Akävar.[55] Given that reasoning it is similarly impossible to calculate and identify every purchaser of Akävar. Because there are at least tens of thousands of consumers who have purchased Akävar, joinder of all purchasers with complaints about its effectiveness is impracticable. Therefore, the numerosity prong is satisfied.

■ Commonality requires only one question of law or fact common to the entire class.[56] Plaintiffs claim there are many common questions between the class including: whether Defendants uniformly marketed and sold Akävar as a proven weight loss product with a core message; whether Defendants' uniform marketing and sales practices were unlawful, deceptive, fraudulent, false and/or misleading; and whether Defendants' acts and omissions related to the uniform misrepresentation of Akävar violated RICO, the UPUAA and the UCSPA. All of the representative Plaintiffs have stated that they bought Akävar because of some variation of the slogan "Eat all you want and still lose weight." The Court finds relying on this message constitutes at least one common question of law or fact between the class sufficient to satisfy the commonality requirement.

■ The third prong, typicality, requires the claims or defenses of the representatives be typical of the class. This prong is satisfied if the named plaintiffs' claims arise from the same events or practices giving rise to the claims of other class members and are based on the same law.[57] Plaintiffs state that both their claims and the claims of the potential class members are based upon the legal theories that Defendants misrepresented the characteristics of Akävar in violation of consumer protection statutes and federal and state racketeering statutes and were unjustly enriched because of their unlawful conduct. Plaintiffs state that, like all the members they seek to represent, they suffered money damages by paying for Akävar but receiving something with no benefits. They also state they are entitled to the same type of remedies including injunctive or equitable relief, damages and/or treble damages, and restitution or disgorgement.

■ Finally, Plaintiffs argue they meet the adequacy requirement because they have retained seasoned and experienced class action attorneys who have already been conscientiously and vigorously representing their rights for the past two years in this litigation. With their previous experience and success in this type of litigation, Plaintiffs argue their representation is adequate. Plaintiffs further argue that they are adequate class representatives because all of their interests and objectives are the same as the class. Plaintiffs also assert there are no competing or antagonistic interests going to the subject matter of the Complaint.

The Court finds that Plaintiffs have satisfied the requirements of Rule 23(a). The class is so numerous that joinder is impracticable, common questions of law and fact exist, the claims are typical of the class and the representation is adequate. Therefore, the Court will turn to the analysis of Rule 23(b).

### ii. Rule 23(b)

Plaintiffs seek certification pursuant to Rule 23(b)(3) which states:

> [a] class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that the questions of law or fact common to

---

54. Docket No. 128 at ¶¶ 46, 49.

55. *Id.* at 47.

56. *DG*, 594 F.3d at 1195.

57. Fed.R.Civ.P. 23(a)(3); *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir.1998).

class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense or separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.[58]

Predominance ensures that the class is "sufficiently cohesive to warrant adjudication by representation."[59] The critical question is "whether there is 'material variation' in the defendants' posture toward the different plaintiffs."[60] "Common issues predominate when the focus is on the defendant's conduct and not on the conduct of the individual class members."[61] Predominance is usually present when the action is based on a common course of conduct on the part of defendant.[62] The current conduct at issue deals with Defendants' marketing practices, which affected each consumer in the same way, and whether Defendants had sufficient scientific basis for their claims. Because the existence of a sufficient scientific basis is a dispositive issue, a determination on that issue will resolve one way or another all of Plaintiffs' claims. Therefore, at least, that issue predominates.

Superiority looks to ensure the litigation is carried out as efficiently and fairly as possible for all parties.[63] "[T]he superiority requirement asks a district court 'to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication.'"[64] Here, a class action is both the most efficient and most fair method for adjudicating this claim. Individual members should have no interest in controlling the litigation because the cost of pursuing a single case would exceed any potential return. Moreover, the key issue in this case, whether scientific evidence existed, will not differ for each member, nor will there be different strategies or incentives in establishing that Defendants lacked sufficient scientific evidence as a basis for their claims.

Additionally at least one other case has already been consolidated into this case. Two other cases were also recently filed, one filed by the FTC in this District, and another filed in a California federal district court. Because one of the actions is already in this District, and one has already been consolidated, concentrating the new actions will further "eliminate[ ] duplicative discovery, prevent[ ] inconsistent pretrial rulings ... and conserve[ ] the resources of the parties, their counsel and the judiciary."[65]

Plaintiffs have submitted a bifurcated trial plan, consolidating the proof consistent with all class members including the marketing materials used in the promotion of Akävar, expert testimony regarding the effects of the

**58.** Fed.R.Civ.P. 23(b)(3).

**59.** *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

**60.** *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968).

**61.** *Mercedes–Benz Antitrust Litig.*, 213 F.R.D. 180, 187 (D.N.J.2003).

**62.** *Owner–Operator Indep. Drivers Ass'n, Inc. v. C.R. England, Inc.*, 2005 WL 2098919, at *6 (D.Utah Aug. 29, 2005) (finding predominance where the question of basic liability can be established readily by common issues); *Elias v. Ungar's Food Prods.*, 252 F.R.D. 233, 249 (D.N.J. 2008) (finding predominance where focus is on defendant's representations on whether product is different from what was promised); *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 113 (E.D.Pa.2005).

**63.** *Hillis v. Equifax Consumer Servs., Inc.*, 237 F.R.D. 491, 504 (N.D.Ga.2006).

**64.** *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 309 (3d Cir.2005) (quoting *Georgine v. Amchen Prods., Inc.*, 83 F.3d 610, 632 (3d Cir.1996), *aff'd*, 521 U.S. 591, 117 S.Ct. 2231).

**65.** *In re Prudential Ins. Co. of America Sales Practices Litigation*, 962 F.Supp. 450, 518 (D.N.J. 1997).

marketing materials, and expert evidence regarding the clinical benefits of Akävar, in order to have a single trial on the issue of liability.[66] This plan also demonstrates that certifying the nationwide class is manageable because the claims to be tried during this phase, 1) RICO, 2) UPUAA, 3) UCSPA, 4) unjust enrichment, 5) responsibility for the alleged unlawful activity, and 6) injunction, would not differ significantly if the class were not certified. Because the proof regarding all of these claims is the same for all class members, consolidating the cases and certifying the class is the most fair and efficient method for adjudication in this case.

### iii. Rule 23(c)(2)

The last requirement in the certification process is notice.[67] Once a class is certified, the court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[68] Plaintiffs state that they have hired a firm specializing in designing and implementing large scale, unbiased, legal notification plans.[69] Plaintiffs represent to the Court that such notice will include: 1) individual notice by electronic mail and/or first-class mail sent to all reasonably identifiable Class members; 2) nationwide paid media notice through a combination of print publications, including newspapers, consumer magazines, newspaper supplements and the Internet; 3) a neutral, Court-approved, informational press release; 4) a neutral, Court-approved Internet website; and 5) a toll-free telephone number.[70] Similar mixed media plans have been approved by other district courts post class certification.[71] The Court finds this plan is sufficient to meet the notice requirement.

### iv. Defendants' Opposition

Defendants spend much of their opposition arguing the merits of the case. However, as acknowledged by both parties, class certification is not based on the merits of the claim, but rather on whether the proposed class in question meets the requirements of Rule 23.[72] Substantively, Defendants argue that Plaintiffs have not met their burden of establishing they meet the specifications of Rule 23.

Defendants argue that Plaintiffs have a strict burden of proof to show they satisfy the numerosity, commonality, typicality and adequacy of representation requirements of Rule 23.[73] Defendants also restate that Plaintiffs must show common questions of law or fact under the same strict burden of proof.

Defendants argue that Plaintiffs cannot establish their claim is typical of the proposed class. Defendants quote Plaintiffs' memorandum in support and argue they are unable to show the claims are focused on its "uniform, consumer-directed course of conduct that affected each consumer in the same way" because the advertising was not uniform and it cannot be said to have affected each consumer in the same way. This snippet, however, was taken from Plaintiffs' discussion on predominance, not their section on typicality. Predominance focuses on Defendants' course of conduct. Moreover, all of the named Plaintiffs stated they had purchased the product because of an advertisement informing them they could "Eat all they wanted and still lose weight."

Although Defendants attempt to establish, through expert testimony, that advertisements affect every individual differently,[74]

**66.** Docket No. 116, Ex. 19.

**67.** FED R. CIV. P. 23(c)(2).

**68.** *Stoffels v. SBC Commc'ns, Inc.,* 254 F.R.D. 294, 298 (W.D.Tex.2008) (internal citations omitted).

**69.** Docket No. 116, at 18. (citing *id.,* Ex. 18).

**70.** *Id.* (citing *id.,* Ex. 18 at ¶¶ 12–13).

**71.** *See e.g., Stoffels,* 254 F.R.D. at 298–300; *In Re Simon II Litig.,* 211 F.R.D. 86, 183 (E.D.N.Y. 2002).

**72.** *DG,* 594 F.3d at 1193; Docket No. 130 (citing *Shook,* 543 F.3d at 612).

**73.** *Trevizo v. Adams,* 455 F.3d 1155, 1161–62 (10th Cir.2006).

**74.** Docket No. 128 at xxvi (citing *id.* Ex. 15 at ¶¶ 6–7).

the statements and experience of the named Plaintiffs seem to indicate otherwise. Defendants' expert "observed a great deal of variance" among Akävar purchasers including: purchasing for different reasons, exposure to different advertisements, influences in purchasing, different purchase prices, among other things.[75] Defendants do not address that each named Plaintiff stated their reasons for purchasing Akävar were the same and were directly related to the slogan "Eat all you want and still lose weight." At the very least, the phrase "Eat all you want and still lose weight" induced the named Plaintiffs into identical action, namely purchasing Akävar. The Court finds no reason or evidence that the phrase did not also induce identical behavior in others.

Defendants also argue that Plaintiffs cannot establish typicality because most consumers who actually purchased Akävar did lose weight and although the named Plaintiffs allege it did not work for them, they must also show it did not work for the unnamed class members. The Court is not persuaded by this argument because the issue is whether Defendants misrepresented their claims regarding the product and whether they had adequate scientific support for those claims. Defendants also spend almost two pages discussing the efficacy of the product, the testing performed on the product, and the testing they were not required to perform. The validity and efficacy of Akävar as a weight loss product goes to the merits of the case and is irrelevant for the purposes of establishing a class.

Defendants further argue that the typicality requirement is not met because "a class representative must possess the same interest and the same injury as the class members."[76] Defendants rely on Judge Kimball's statements and interpretation, in a separate action, that where a defendant made multiple representations that plaintiff did not see or hear, "plaintiff could not satisfy the typicality requirement for misrepresentation claims because he would be 'unable to prove the claims of absent class members who saw different representations.'"[77] Judge Kimball further held that "typicality cannot be satisfied when a 'named plaintiff who proved his own claim would not necessarily have proved anybody else's claims.'"[78] Defendants also argue, relying on *Iosello v. Lawrence*,[79] other courts have denied class certification based on representations on websites for lack of typicality where there was no attempt to limit the class to consumers who "viewed the same web pages as plaintiff."[80]

In *Iosello*, the court recognized that "[t]ypicality may be found even where 'there are factual distinctions between the claims of the named plaintiffs and those of other class members.'"[81] The *Iosello* plaintiff attempted to form a class against a law firm he contracted with because the firm's procedures, including false and misleading representations, violated the Credit Repair Organization Act, and the Illinois Consumer Fraud and Deceptive Business Practices Act. The *Iosello* court found typicality was lacking because the plaintiff had made no attempt to limit the class to those who signed the same contract or viewed the same web pages as he had. The present case is distinguishable because Plaintiffs point to a specific representation that induced all of them to purchase the product. Therefore, unlike *Iosello*, the potential class in this case essentially did view the "same contract" and "web pages."

In *Teflon Products Liability Litigation*,[82] the court stated "typicality is established if the claims of all members arise from a single

75. *Id.;* Ex. 15 at ¶ 8.

76. *Id.* at 7 (quoting *Dilley v. Academy Credit, LLC*, 2008 WL 4527053, at *4 (D.Utah Sept. 29, 2008)).

77. *Dilley*, 2008 WL 4527053, at *5.

78. *Id.*, at *4 (quoting *Hillis v. Equifax Consumer Servs., Inc.*, 237 F.R.D. 491, 497 (N.D.Ga.2006)).

79. *Iosello v. Lawrence*, 2005 WL 2007147 (N.D.Ill. Aug. 18, 2005).

80. *Id.* at *5.

81. *Id.*

82. 254 F.R.D. 354 (S.D.Iowa 2008).

event or share the same legal theory."[83] The *Teflon* court stated "[t]he presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry."[84] Although the *Teflon* plaintiffs' allegations stemmed from "particular statements made and/or marketing practices employed by DuPont regarding its ... products," the court found no typicality because the "alleged misstatements and/or falsities ... spanned a forty-plus-year period, across a wide variety of advertising and promotional media. Each person was exposed to different representations, at different time periods."[85] That case dealt with the health and safety of Teflon® which was invented in 1938 and marketed commercially beginning in 1946.[86] DuPont represented that Teflon® was completely safe, even though they had been aware since the 1950s or 1960s that the product could decompose at temperatures within normal use, releasing dangerous synthetic chemicals into the body and across the placenta causing sickness and birth defects.[87] The studies started to gain public attention in the late 1990s and early 2000s resulting in EPA investigations and settlements.[88] However, DuPont continued to represent on its website that its product was safe through at least April 25, 2006.[89] DuPont has never actually manufactured cookware, but their Teflon® coating is sold to approximately 120 different cookware manufacturers, and as of December 2008, billions of Teflon® coated cookware products had been sold.

The facts alone distinguish the situation in *Teflon* from the current case. The time period in question is barely three years as the first advertisement for Akävar appeared in Star Magazine on February 5, 2007.[90] The variety of media consisted of printed advertisements, in store promotional material and a website. The *Teflon* court also noted that "even if class members were exposed to the same representation, advertisement, or omission, the Court cannot presume that each member responded to the representation or omission in an identical fashion."[91] The same cannot be said for this case as some of the representative Plaintiffs are unable to remember exactly what type of advertisement they saw or where they saw it, but they all remember that its core message, "Eat all you want and still lose weight," caught their attention and induced them to purchase Akävar.

The Court finds Plaintiffs have met their burden of proving typicality. They allege that they, along with the other class members, were induced by the marketing and advertising conduct, and specifically through a single core message, of Defendants to purchase Akävar. The Court further finds that all of Defendants alleged "individual defenses" relate to the Plaintiffs' not relying on advertising from or approved by them. Finally, the Court finds that individual reliance is an issue for the determination of damages, the issue to be determined by the class action is whether there was a violation.[92]

The Court finds that adequacy under Rule 23(a)(4) is met because Plaintiffs have established a predominate issue, mainly the representation of "Eat all you want and still lose weight," and the defense to that issue will be the same for all Class members. Further, because one main questions persists, the Court finds Plaintiffs have satisfied both predominance and superiority.

Defendants argue that the case would be unmanageable because it will be too difficult to find users of Akävar, determine their grievances, etc. Given Plaintiffs' planned comprehensive notice plan, and because the named Plaintiffs themselves responded to an internet advertisement, the Court finds that

83. *Id.* at 364.

84. *Id.* at 365 (quoting *Elizabeth M. v. Montenez,* 458 F.3d 779, 787 (8th cir.2006)).

85. *Id.*

86. *Id.* at 357.

87. *Id.* at 358.

88. *Id.*

89. *Id.*

90. Daines Depo., at 12:1–7, 18:13–21, 36:9–13.

91. *Teflon,* 254 F.R.D. at 365.

92. *Tylka v. Gerber Prods. Co.,* 178 F.R.D. 493, 499 (N.D.Ill.1998).

other similarly situated Plaintiffs will be given adequate notice of the lawsuit and the ability to join.

The Court finds that Plaintiffs have met all the requirements for class certification, and therefore, class certification on the issue of liability is appropriate. Individual damages and reliance will be handled separately after the determination of liability through the class.

### III. Motion to Strike

Defendants argue that Dr. Barrett's declarations offer three opinions that each must be stricken based on Fed.R.Evid. 702 and *Daubert* and its progeny.

Defendants first argue that Dr. Barrett is not qualified as an expert in the field because she lacks expertise in the fields of obesity research and weight loss. Defendants next argue that Dr. Barrett's first opinion regarding six advertising claims were not based on the correct factual or legal assumptions. Defendants final argument is that Dr. Barrett's opinions have no bearing on class certification or the merits of the case. The Court finds Defendants' Motion goes to the merits of the case. Because the merits are not to be decided at the class certification stage, the Court will not address any arguments related to the merits at this time, and the motion will be denied.

### IV. Conclusion

Based on the above, it is hereby

ORDERED that Plaintiffs' Motion to Certify Class (Docket No. 114) is GRANTED in accordance with this ORDER. The Court will certify a class limited to those persons who purchased Akävar in reliance of the slogan "Eat all you want and still lose weight." It is further

ORDERED that Defendants' Motion to Strike (Docket No. 114) is DENIED. It is further ORDERED that the parties meet and confer regarding notice and submit a proposed order within 60 days. It is further

ORDERED that this Order shall be filed under seal and served only on counsel for Plaintiff and Defendant. Plaintiff and Defendant shall have 7 days from the entry of this Order to submit a notice of any specific information herein they seek to retain under seal as set forth above. Said Notice shall be hand-delivered to the undersigned's chambers, 350 South Main Street, Rm. 148, Salt Lake City, Utah, clearly marked as SEALED RE: NOTICE OF UNSEALING no later than 7 days following entry of this Order.

The Court also reminds the parties of the page length rules. The Court warns the parties that argument couched in the facts section of future filings will not be tolerated.